JAMES CAMPBELL, impleaded, &c., Appellant, *v.* JAMES CARTER, Appellee.

APPEAL FROM JO DAVIESS.

If a party acquires an estate upon which he has an incumbrance, the incumbrance is, in equity, considered as subsisting, or extinguished, according to his intention expressed or implied. The intention is the controlling consideration.

If no intention has been manifested, equity will consider the incumbrance as subsisting, or extinguished, as may be most conducive to the interest of the party. If it is a matter of indifference, it is regarded as extinguished.

A court of equity will not interfere to relieve a party from an injudicious bargain, if he acts upon a misapprehension of his legal rights, and not upon a mistake of facts.

THE facts of this case will be found in the opinion of the court.

This cause was heard before SHELDON, Judge, at November term, 1852, of the Jo Daviess Circuit Court.

T. L. DICKEY, for appellant.

BLACKWELL and BECKWITH, for appellee.

Campbell *v.* Carter.

Treat, C. J. The principal facts in this case are these. In April, 1841, Brush gave Farwell three promissory notes, amounting in the aggregate to $2,378.04; and he also executed a mortgage on lot forty-five in the town of Galena, to secure their payment. At the October term, 1842, of the Jo Daviess circuit court, Farwell recovered a judgment against Brush for $2,104.17, the amount then due upon the notes; and also a judgment of foreclosure in a proceeding by *scire facias* upon the mortgage. An execution issued on the former judgment was returned " no property found," in March, 1843; and a special execution, issued on the latter judgment, was returned, in February, 1843, " not satisfied," by the order of the plaintiff. On the 18th of April, 1843, Brush and wife, by deed of general warranty, for the expressed consideration of $2,150, conveyed lot forty-five to Farwell in fee; and Farwell's attorney made an entry in the judgment docket, opposite each of the judgments, in these words : '(This judgment satisfied by sale of real estate to the plaintiff.') On the 29th of June, 1846, Farwell and wife, by deed of quitclaim, conveyed lot forty-five to Carter.

At the June term, 1842, of the Jo Daviess circuit court, the State Bank of Illinois obtained a judgment against Brush, Hathaway, and Clark, for $436.42; and at the succeeding October term, it obtained a judgment against Brush and Miller, for $104.50. By virtue of an execution issued on the first of these judgments, lot forty-five was sold to Campbell, on the 16th of May, 1848, for the sum of $575.36; and it was sold to Campbell on the same day for one dollar, under an execution issued upon the last judgment. And on the 17th of August, 1849, Campbell received a sheriff's deed for the lot.

In November, 1848, Carter filed a bill in chancery against Campbell and others, praying that the mortgage might be decreed to stand as a subsisting security, to protect his title against the sale made under the judgments in favor of the bank. The bill alleged that Farwell knew nothing of the existence of those judgments when he accepted the deed from Brush. Campbell, in his answer, set up the purchase made by him at the sheriff's sale, and claimed title to the lot under the same. The cause was submitted to the court on certain documentary and record evidence, the substance of which has already been set forth, and the oral testimony of a witness, who stated that he was the attorney of Farwell in the original proceedings; that Farwell came to Galena in 1841, to obtain security for a debt he held against Brush, and Brush gave the notes and mortgage offered in evidence on lot forty-five; the debt was over $2,000, and the notes and mortgages were placed in witness's hands

for collection in 1842; he instituted two suits, one in assumpsit, the other by *scire facias*, to foreclose the mortgage; judgments were recovered in both cases, on the same day, and for the same cause of action; executions were issued on those judgments, and a levy was made on the special *fieri facias*, and property advertised for sale; after the property was so advertised, Brush came to witness, and proposed to relinquish lot forty-five for the debt, to save expense, as it was all he had, giving as a reason it was all he had, and would save great expense and cost in selling; witness accepted the proposition, as Mrs. Brush was not a party to the mortgage, and Brush proposed they should both join in the deed to Farwell, which witness drew, and they executed; the entry of satisfaction in the judgment docket was made by witness about the time the deed was made by Brush and wife; subsequently witness made this addition: " The defendant having transferred to the plaintiff the mortgaged premises; the release of the mortgaged premises by Brush and wife was all the satisfaction had for the judgment, and there was no entry of satisfaction made on the margin of the record of mortgages; the addition on the judgment docket was made prior to the year 1848, before any proceedings were had; there was no release given to Brush; Brush gave a deed, which is in evidence, releasing his equity of redemption; it was simply to take Brush's equity of redemption that this deed was given; Brush held the property at the time of the execution of the deed by Brush and wife to Farwell, and then attorned to Farwell, and Farwell and his grantees and tenants have been in possession ever since; the lot was never sold on Farwell's special *fieri facias* on the *scire facias* judgment; all proceedings were suspended on Brush and wife making the deed to Farwell; witness thinks the satisfaction on the docket was entered about the time of making the deed by Brush and wife; the addition was made some considerable time afterwards; cannot say how long; witness made the addition because the manner of the entry was subject to some misconstruction, and there had been some talk about it; witness thinks he has Brush's notes yet, as it was his usual practice to keep them; it was understood when the deed was made by Brush and wife, that this was a satisfaction and discharge of his debt."

The court decreed that the mortgage should be held to exist and remain in full force, for the protection and security of the complainant's title. Campbell prosecuted an appeal.

C At law, the mortgage was clearly extinguished. The mortgagee accepted an absolute deed of the estate, and entered sat-

Campbell *v.* Carter.

isfaction of the judgments obtained on the notes and mortgage. The debt was thus fully paid, and the security discharged of record. The question now is, Can a court of equity still regard the mortgage as an unsatisfied and subsisting incumbrance? The equitable doctrine on this subject is thus stated by Sir William Grant, in Forbes *v.* Moffat, 18 Ves. 384: " It is very clear, that a person, becoming entitled to an estate, subject to a charge for his own benefit, may, if he chooses, at once take the estate, and keep up the charge. Upon this subject, a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished where it would subsist at law ; and sometimes preserve it where at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united. In most instances, it is, with reference to the party himself, of no sort of use to have a charge on his own estate ; and, where that is the case, it will be held to sink, unless something shall have been done by him to keep it on foot." Again : " Where no intention is expressed, or the party is incapable of expressing any, I apprehend the court considers what is most advantageous for him." It is said by the Chancellor, in Compton *v.* Oxenden, 4 Brown's C. C. 397 : " Where there is a union of rights, neither of them can be executed at law ; but this court will preserve them distinct, if the intention to do so is either expressed or implied." Chancellor Kent remarks, in James *v.* Johnson, 6 Johns. C. R. 417 : " If a person takes the legal estate by mortgage, and then, by his own act, takes the equity of redemption, and vests it in himself, the estate is discharged from the incumbrance. It would be a burden to no purpose. This is the good sense and reason of the thing. Where debtor and creditor become the same person, there can be no right put into execution ; it must, of course, be extinguished. This is the general rule, both at law and in equity ; and, in equity, the merger is prevented, and the distinction of the estates preserved, in special cases only. It is where the intention of the party is distinctly declared at the time, or where something just and beneficial requires the charge to be preserved, in a case in which the party has not declared, or cannot declare, his intention." It is said, in Hatch *v.* Kimball, 16 Maine, 146 : " It is, in each case, a question of intention, whether or not there is an extinguishment of the charge upon the estate. If, at the time the mortgage is taken in, the intention to extinguish it appears, that is decisive. If it does not, equity presumes it to be outstanding, or extinguished, as the interests of the party may require." The court say in Gibson *v.* Crehore, 3 Pick. 475 : " When the purchaser of a right to redeem takes an

assignment, this shall, or shall not, operate as an extinguishment of the mortgage, according as the interests of the party taking the assignment may be, and according to the real intent of the parties." The same doctrine is laid down in the cases of Helmbold *v.* Man, 4 Wharton, 410; Moore *v.* Harrisburg Bank, 8 Watts, 138; Gardner *v.* Astor, 3 Johns. C. R. 53; and Starr *v.* Ellis, 6 Johns. C. R. 393. Indeed, there seems to be no conflict of opinion upon the subject.

(The conclusion from all the authorities clearly is, that if a party acquires an estate upon which he has an incumbrance, the incumbrance is, in equity, considered as subsisting, or extinguished, according to his intentions, expressed or implied. The intention is the controlling consideration, where it has been made known, or can be inferred from the acts and conduct of the party. And the court will look into all of the circumstances of the case, to ascertain his real intention. If it appears, that he intended to discharge the incumbrance, and rely exclusively upon his newly acquired title, the incumbrance is regarded as extinguished, and cannot afterwards be set up to strengthen and support that title.) If no intention has been manifested, equity will consider the incumbrance as subsisting, or extinguished, as may be most conducive to the interests of the party. If no evidence of his intention appears, and it is a matter of indifference to him whether the incumbrance be kept alive or not, it is regarded as extinguished.

( Applying these principles, there can be but little difficulty in coming to a correct conclusion respecting this case. Farwell held notes against Brush, and a mortgage on the lot in question to secure their payment. He recovered judgments on both the notes and mortgage, and was endeavoring to enforce satisfaction. Brush then proposed to make an absolute conveyance of the lot, with covenants of warranty and a release of dower, in satisfaction and discharge of the debt. The proposition was accepted, and the deed executed; and thereupon Farwell entered satisfaction of the judgments. The transaction was not a mere release of the equity of redemption to the mortgage; not a mere giving up of the security in discharge of the debt. It was something more. In addition to the equity of redemption, Farwell obtained a relinquishment of the contingent right of dower, and the covenants of warranty of the mortgagor. There can be no doubt as to his real intentions in the matter. They were not left to inference or conjecture, but were manifested by the most unequivocal acts. He accepted the lot in full satisfaction of the indebtedness, and cancelled all existing evidence of that indebtedness. He intended to discharge the

incumbrance, and rely exclusively upon the title acquired by the deed. If he designed to keep the incumbrance on foot, why did he discharge of record the judgment rendered on the mortgage? The debt was fully paid and satisfied, and this discharge of the judgment shows, that he considered the incumbrance as extinguished. It is not pretended that there was any mistake in the entry of satisfaction. The act was deliberately and intentionally done, and he, and those claiming under him, must abide the consequences resulting from it. It would be in clear violation of the real intention of the parties to resuscitate and set up the incumbrance.

It may be, that Farwell entered into the arrangement under the belief and expectation, that he would acquire an unincumbered title to the lot. But that would not change the legal aspect of the case. It would only show that the arrangement was improvidently made. A court of equity will not interfere to relieve a party from the effects of an injudicious bargain. The fact that Farwell had no actual knowledge of the bank judgments, forms no basis for equitable relief. He had constructive notice of their existence, and that bound him as effectually as would express notice. He must be deemed to have acted upon full knowledge of those judgments. It was his own fault if he did not obtain the information before concluding the arrangement. He acted upon a misapprehension of his legal rights, and not upon a mistake of facts. The cases of Garwood *v.* Administrators of Eldridge, 1 Green's C. R. 145, and Banth *v.* Garmo, 1 Sanford's C. R. 383, are decisive on this point.

Not one of the numerous cases cited on the argument goes further than to hold, where the mere equity of redemption is released and the note is cancelled, that the mortgagee may still rely upon the mortgage to protect his title. But this is a very different case. The debt and the security were both cancelled. The release of the equity of redemption was not the only consideration received by Farwell. Besides the equity of redemption, he obtained the covenants of warranty of the mortgagor, and the relinquishment of a dower interest in the lot. Holman *v.* Bailey, 3 Met. 55, is an authority very much in point. In March, Temple gave Bailey a mortgage on real estate, to secure the payment of five promissory notes, for $100 each. In April, Temple made a mortgage of the same premises to Holman. In May, Bailey took from Temple an absolute deed of the mortgaged premises, with covenants of warranty, in satisfaction of the five notes, and of another note for $300; and he gave up the six notes; but the mortgage was not formally discharged. Holman filed a bill in equity against Bailey, to

redeem the estate from the first mortgage. The court dismissed the bill on the ground, that Bailey's mortgage was extinguished. It said: "We think it very clear, that the notes then given, including the five secured by the mortgage, were in fact paid and discharged, by Temple, by the agreement in May. It was then agreed that the estate should be conveyed in fee, with warranty and without condition, in full satisfaction and discharge of those notes and the note for $300; and the estate was conveyed pursuant to the agreement, and the notes were given up and cancelled. These were then at an end; they were effectually paid and extinguished."

Farwell having extinguished his incumbrance, the lien of the bank judgments attached upon the lot. He acquired the lot subject to these judgment liens, and could transfer no greater interest to Carter. The latter should have paid off the judgments, or redeemed from the sale to Campbell. These were the only modes of protecting his title.

The decree is reversed, and the bill dismissed.

*Decree reversed.*