THE GAGE HOTEL COMPANY

*v.*

THE UNION NATIONAL BANK.

*Opinion filed February 14, 1898.*

1. BANKS—*drawer cannot stop payment of check in hands of bona fide holder.* The drawer of a check cannot stop payment thereof after it has passed into the hands of a *bona fide* holder.

2. SAME—*bank cannot refuse payment of check to bona fide holder if drawer's deposit is sufficient.* Upon presentment of a check by a *bona fide* holder for value, the amount called for by the check is thereby absolutely appropriated to the holder if the drawer's deposit is sufficient, and the bank cannot refuse payment, notwithstanding the drawer's orders to the contrary.

3. SAME—*bank having funds is liable to holder of check on refusing payment.* A bank having sufficient funds of the drawer on deposit is liable to a *bona fide* holder for value, upon its refusal to pay a duly presented check.

4. SAME—*effect of private arrangement that new deposit shall not be applied to old checks.* An arrangement between a depositor and his bank that his new deposits shall not be applied to the payment of

checks previously drawn, does not authorize the bank to refuse payment of such checks upon presentment, if the amount of the drawer's old and new deposits are together sufficient to pay them.

5. SAME—*depositor may draw check in reasonable expectation of having funds to meet it.* A depositor may draw a check in the reasonable expectation that he will have sufficient funds to meet it when presented, and the fact that his deposit is not sufficient when the check is drawn does not affect the holder's right to payment on presentment, if the drawer's deposit is then sufficient.

*Gage Hotel Co.* v. *Union Nat. Bank*, 69 Ill. App. 681, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

ASHCRAFT & GORDON, for appellant.

TENNEY, MCCONNELL, COFFEEN & HARDING, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Henry C. Knill was a depositor in the bank of appellee, and on June 21, 1893, drew his check on appellee for $300, payable to the order of Leroy Payne, and delivered it to the payee. Payne on the same day endorsed the check and delivered it to appellant, who paid him $300 for it. Appellant deposited the check to the credit of its account with its bank, the Union Trust Company of Chicago, and the latter sent it through the clearing house, and it was presented to appellee for payment on June 23. On the day the check was drawn the amount of Knill's deposit was $98.53, but he made subsequent deposits, and when the check was presented he had on deposit with appellee funds in excess of the amount of the check. Appellee refused payment on the ground that Knill had ordered it not to pay the check, and the paying teller marked it "Payment stopped." On June 24 the dishonored check was returned to appellant by the Union Trust·

Company, and appellant on that day again presented it to appellee, which still had sufficient money to Knill's credit to pay it, but payment was again refused on the ground that it had been stopped by Knill. Thereupon the appellant brought this suit against appellee for the amount of the check. A jury was waived and the cause tried before the court, resulting in a finding and judgment for appellee. On appeal the judgment was affirmed by the Appellate Court for the First District, which has granted a certificate of importance, and the case has been brought to this court.

There is no dispute as to the material facts as above stated, and the rights of the parties depend upon the question whether appellee was justified in its refusal to pay the check because of the order of Knill that it should not be paid. This question is presented by the action of the court in refusing and modifying propositions of law presented at the trial.

The relation of the banker to the check-holder has been frequently considered by this court, and the right of the check-holder to payment on presentation of the check, provided there are sufficient funds on deposit to meet it, has been recognized and upheld in every case. This court has constantly held that when the check of a depositor is presented to the banker, if the deposit is sufficient to pay the check, it is an absolute appropriation of the amount of the check to the holder, and that the contract implied by law between the banker and his depositor for the benefit of whoever may become the holder of a check, is one upon which such holder can maintain an action. A different rule prevails in some other jurisdictions, but this one has been affirmed by many courts and leading text-writers as the logical one.

The case of *Munn* v. *Burch,* 25 Ill. 21, has been generally regarded as the leading case in this country stating the nature of the contract, and affirming the right of the check-holder to sue and recover from the bank for re-

fusing to honor a depositor's check under such circumstances. In that case, after stating the universal custom which enters into and forms a part of every contract between a banker and depositor, it was said (p. 25): "This universal custom shows us what the contract of all the parties is. It shows us that the banker, when he receives the deposit, agrees with the depositor to pay it out, on the presentation of his checks, in such sums as those checks may call for and to the person presenting them, and with the whole world he agrees that whoever shall become the owner of such check shall, upon presentation, thereby become the owner and entitled to receive the amount called for by the check, provided the drawer shall at that time have that amount on deposit. Who shall object to that portion of the contract which the law raises by implication on the part of the banker to the third person—to anybody and to everybody?" And it was further said: "We hold, then, that the check of a depositor upon his banker, delivered to another for value, transfers to that other the title to so much of the deposit as the check calls for, which may again be transferred to another by delivery, and when presented to the banker he becomes the holder of the money to the use of the owner of the check, and is bound to account to him for that amount, provided the party drawing the check has funds to that amount on deposit, subject to his check at the time it is presented."

In *Fourth Nat. Bank* v. *City Nat. Bank*, 68 Ill. 398, this court said (p. 402): "The universal custom informs us what the contract of all the parties to such transactions is. It informs us that the banker, when he receives the deposit, agrees with the depositor to pay it out, on the presentation of his checks, in such sums as those checks may specify and to the person presenting them, and with the whole world the banker agrees that whoever shall become the owner of such check shall, upon presentation thereof, become thereby the owner and entitled to receive

the amount specified in the check, provided the drawer shall at that time have that amount on deposit." The same doctrine has been affirmed in the following cases: *Bickford* v. *First Nat. Bank of Chicago*, 42 Ill. 238; *Union Nat. Bank* v. *Oceana County Bank*, 80 id. 212; *Bank of America* v. *Indiana Banking Co.* 114 id. 483; *Metropolitan Nat. Bank* v. *Jones*, 137 id. 634; *Bank of Antigo* v. *Union Trust Co.* 149 id. 343.    It is also the rule that the drawer of a check can not stop payment of it after it has passed into the hands of a *bona fide* holder.    *Union Nat. Bank* v. *Oceana County Bank, supra.*

These decisions are not controverted by appellee, but the argument in its behalf is, that after the check was given, Knill could make an arrangement with appellee that future deposits should not be applied to its payment.    When the check was drawn the amount to Knill's credit was not sufficient to pay it, and after Knill had given the order not to pay it the bank received deposits before the presentation, which increased his balance to more than the amount of the check.    It is insisted that Knill was free to make, and appellee to receive, deposits under an arrangement that this check should not be paid. Of course, if Knill could make such an arrangement on June 21 as to further deposits, he or any other depositor in a bank could make a special contract, when opening an account, that only certain checks should be paid, or at any time limit the liability of the bank by a secret arrangement between himself and the bank as to checks that might be drawn in the future, in any manner that they saw fit.    We think such a proposition plainly unsound, and in conflict with the decisions above referred to.    If such a special agreement could be made, a person about to take a check could not rely upon the contract implied by the law, but would be compelled to go to the bank and ascertain whether the account had been opened under any special or private arrangement between the banker and depositor, or whether any instructions had

been given by the depositor as to what checks should be paid. Even if he should find that there was no agreement or instruction, and should take the check, he could not then rely upon the banker's contract to pay it if the funds were on deposit, since they might be checked out or withdrawn, and a new deposit made under an agreement or instruction that he should not be paid.

The basis of the decisions has been, that by universal custom there is a contract between the banker and depositor, created by the deposit and receipt of the money, with the whole world and for the benefit of every person who shall become the holder of a check. If the funds are in the bank when the check is drawn, the drawing is an appropriation, as between the drawer and the payee, of the sum of money named in the check, which is to lie in the bank until called for by a presentation of the check. It is true that in such a case there is no privity between the bank and the check-holder until presentment, and that priority in drawing a check does not give priority of right to the fund as against the banker, but that such priority of right is determined by the order of presentation. In *Munn* v. *Burch, supra,* it was said (p. 25): "Surely every sound lawyer will at once perceive a privity of contract between the banker and the holder of the check, created by the implied promise held out to the world, by the banker on the one side, and the receiving of the check for value, and presenting it, on the other. It is a familiar principle, of daily illustration, that a promise made to the public that the performance of a particular act shall entitle the person performing the act to a particular right is a valid assumpsit to such person. The promise on the one hand, and the performance on the other, create a privity between the parties as intimate and as obligatory as if the promise had originally been made to the particular person." In Daniel on Negotiable Instruments (sec. 1638) the author says: "The objection to the check-holder's suing the bank on the ground that there is no privity

between him and the bank seems to us utterly untenable. It is true, there is no privity before the presentment of the check; but by that very act they are brought in privity and the check-holder's right to sue the bank completed."

Knill had a right to draw his check in the reasonable expectation that he would have funds, at the time of presentment, adequate to meet it, and he did have sufficient funds to his credit at the time of presentment. By giving the check he assumed the obligation that the funds should be there. Of course, he might have withdrawn his deposit before presentment, or have declined to make a further deposit to meet the check, and have thus committed a fraud upon appellant; but if he had done so it would have been his fraud, and not that of appellee, and appellee would have been in nowise responsible for it. It does not aid appellee that Knill might have committed a fraud in that way, so that appellant is no worse off than it would have been if he alone had committed the fraud. Its duty was to stand indifferent, and perform its obligation. When it accepted his account it did so with an agreement with the whole world that whoever should become the owner of his check should, upon presentation thereof, become the owner and entitled to receive the amount specified in the check,—not as a matter of favor but as a matter of right,—provided Knill at the time had the amount on deposit. This agreement was for the benefit of such check-holder, and we think no special contract could be made to abrogate it, without the consent of the check-holder. Appellant, in taking the check, had a right to rely upon the contract implied by the law, and was entitled to enforce it.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*