# Fort Dearborn National Bank of Chicago, and E. C. Wilson, Receiver of the First National Bank of Helena, v. Walter F. Wyman.

1. BANKS AND BANKING—*Right to Appropriate Deposits of Failing Banks.*—A bank having on deposit the funds of a bank in failing circumstances and with which it has an open account for previous dealings. may lawfully appropriate such funds and credit such failing bank with the same, and drawers of checks upon such fund by the failing bank acquire no rights, either legal or equitable, which they can enforce to the prejudice of the bank appropriating and crediting such deposit.

2. SAME—*Rights of Drawees of Checks by Failing Banks.*—The delivery of a check drawn by a failing bank of a sister State upon funds deposited to its credit in a resident bank of the State, does not give the drawee such an interest in the funds deposited as he can enforce in equity to the prejudice of the resident bank.

3. MARSHALING ASSETS—*Rights of Paramount Creditors.*—A paramount incumbrancer is not to be delayed or inconvenienced in the collection of his debt, for it is unreasonable that he should suffer because some one else has taken imperfect security.

4. SAME—*Application of the Doctrine.*—The rule marshaling assets will not be applied so as to delay the prior creditor or prevent him from realizing his whole debt, or where it would, for any reason, work injustice to such creditor.

5. SAME—*Where the Doctrine Does Not Apply.*—The doctrine of marshaling assets does not apply to transactions where a resident bank holding collateral securities, and having also on deposit funds of a non-resident bank, before notice of its failure or of any adverse claims to such deposit, appropriates it to the payment of its own indebtedness against such non-resident bank, leaving in its possession only collateral securities.

6. SAME—*The General Rule and Qualifications.*—As a general rule, before the doctrine of marshaling assets will be applied, there must be two funds or properties, on both of which one party has a claim or lien, and the other party has a claim or lien on one only of such funds or properties; it does not follow necessarily that the fund on which both

Fort Dearborn Nat. Bank of Chicago v. Wyman.

the claims originally rested, must be in existence at the moment of time when the aid of the doctrine is invoked.

7.  Checks—*Equitable Assignment as between Drawer and Payee.*— In Illinois, as between the drawer and payee, a bank check given, for value, upon a fund in bank, operates as an equitable assignment to the payee of the sum of money named in the check, and transfers to the payee the right of the depositor to the money on deposit to the amount of the check, if that amount is then in bank.

8.  Equity—*Substance, Not Form.*—It is a principle of very extensive application that equity looks to substance, not form, and it may be termed a maxim of equity.

9.  Same—*General Doctrine of.*—Equity regards that as done which should be done and will require that to be done which ought to have been done, when no third person is injured or embarrassed.

**In Equity.**—Bill of discovery.  Trial in the Superior Court of Cook County; the Hon. Theodore Brentano, Judge, presiding.  Hearing and decree for complainant.  Error by defendants.  Heard in this court at the October term, 1898.  Reversed, with directions.

## Statement.

The defendant in error, Wyman, on September 1, 1896, for value, received from the First National Bank of Helena, Montana, its check for $10,000, payable to his order, and directed to plaintiff in error, the Fort Dearborn National Bank of Chicago.  September 5, 1896, Wyman presented the check to the latter bank and demanded payment thereof, which was refused, and again, on September 8, 1896, he presented it for payment and was refused.

September 1, 1896, when Wyman received the check, and up to September 4, 1896, the Fort Dearborn Bank had on deposit and due to the First National Bank of Helena, $20,523.67.  The former bank also had in its possession, during the same time, certain promissory notes made by divers persons, not then due, aggregating more that $29,000, payable to the order of the latter bank, which had been delivered to the former by the latter bank as collateral security for the amount due on a certificate of deposit of $25,000, payable on demand, issued by said First National Bank May 15, 1895, and held by the Fort Dearborn Bank. The former was also indebted to the latter bank on book account, during this same period, $649.89.

September 4, 1896, said First National Bank became insolvent. The comptroller of the currency appointed a receiver, who at once entered upon his duties and took charge of its assets, and his successor, E. C. Wilson, also appointed by the said comptroller, is now acting as such receiver.

The Fort Dearborn Bank, on September 4, 1896, and before it had any knowledge or notice of the issuance and delivery of the check to Wyman, applied said deposit of $20,523.67, in part payment of the amount due to it on said certificate of deposit for $25,000, and immediately made an entry on its books, crediting said First National Bank with that amount, and thereby completely exhausted said deposit, so that when the check was presented on the following day there was no fund remaining with it subject to the payment of the check. There still remains due to the Fort Dearborn Bank $2,321.39 and some interest thereon, to secure which it holds all said notes.

Wyman filed a bill January 21, 1897, asking for a discovery of some of the facts stated, that the Fort Dearborn Bank be required to make a diligent and prudent disposition of its collateral securities, and from the proceeds to satisfy its lawful claims against the First National Bank, so far as they will avail, and out of the deposit to pay said check, and for general relief.

The cause was tried upon bill and answer and the chancellor decreed that the Fort Dearborn Bank deliver to said Wilson, as receiver of the First National Bank of Helena, said collateral notes; that the receiver proceed to collect the same, and from the proceeds to pay to the Fort Dearborn Bank the amount, including interest due it, then to Wyman the amount due on said check and interest, and to retain the balance as part of the assets of said First National Bank. The decree also provided that if there was not enough to pay Wyman in full, the amount unpaid should be allowed as a claim against said First National Bank, to be paid in due course of administration of its assets, and that Wilson, as receiver, pay the costs of this suit. To reverse this decree this writ of error was sued out.

GILBERT & FELL, attorneys for plaintiffs in error.

It is an elementary rule of the doctrine of marshaling securities that in order to authorize marshaling, the party seeking the relief must have an existing charge against, or interest in a fund which is subject in common with another fund to a paramount liability.    Vol. 1, Story's Equity Jurisprudence, Sec. 633.

It is well settled in this State that as between the payee or holder of a check or draft and the drawee bank, no rights accrue in favor of the payee or holder until the check or draft is presented to the bank and payment thereof is demanded. Greenebaum v. American Trust & Savings Bank, 70 Ill. App. 407; Northern Trust Company v. Rogers, 60 Minn. 208; Gage Hotel Co. v. Union National Bank, 171 Ill. 531; Pabst Brewing Co. v. Reeves, 42 Ill. App. 154; Munn v. Burch, 25 Ill. 35; Fourth Nat'l Bk. of Chicago v. City Nat'l Bank, 68 Ill. 398; Myers v. Union Nat'l Bank, 27 Ill. App. 254; Niblack v. Park Nat'l Bank, 169 Ill. 517; Laclede Bank v. Schuler, 120 U. S. 511; Metropolitan Bank of Chicago v. Jones, 137 Ill. 634; Daniel on Neg. Insts., Secs. 1638, 1643 and 1644 (4th Ed.); Morse on Banks and Banking (3d Ed.), Sec. 505.

Where a bank holds a demand note, or a note past due, it has the right to charge such obligation up against the maker's deposit account, and if it does so before a check drawn by the depositor is presented for payment it will be entitled to hold the deposit against any check afterward presented.    Niblack v. Park Nat'l Bank, 169 Ill. 517; Myers v. Union Nat'l Bank, 27 Ill. App. 254; First Nat'l Bank v. Kelsay, 54 Ill. App. 660.

The certificate of deposit involved in this case is in effect a demand promissory note.    Hunt v. Divine, 37 Ill. 137; Tripp v. Curtenius, 36 Mich. 494.

The defendant in error must concede that the certificate of deposit was due and payable on September 4, 1896.    If it were not then due and payable the Fort Dearborn National Bank would not have had the legal right to credit the money in its possession on that date belonging to the First

National Bank of Helena, in part payment of its claim on said certificate of deposit. And it would have had in its possession, at the time when the draft was presented by the defendant in error, on the 5th day of September, 1896, a sufficient amount on deposit to the credit of the said First National Bank of Helena, the drawer, with which to pay it. If this were so, it is self-evident that the defendant in error would have a plain, adequate and complete remedy at law, and he would be compelled to resort to a court of law and not to a court of equity to recover the amount of his draft from the Fort Dearborn National Bank, had it refused to pay it when presented. So that when the defendant in error comes into a court of equity and asks relief of the character which he has prayed for in his bill, he must admit that the indebtedness of the said First National Bank of Helena, evidenced by the said certificate of deposit, was due and owing to the Fort Dearborn National Bank on September 4, 1896, or his case will be open to the objection that he should have applied to a court of law and not to a court of equity for relief. Further than this the record shows that the certificate of deposit was, in fact, due and payable on September 4, 1896. This fact is expressly alleged in the answer to the bill of the defendant in error and must be taken as true. The law is, that an answer to a bill in equity is to be taken as true where a cause is heard on a bill and answer. Section 29, Chapter 22, Vol. 1, Starr & Curtis' Annotated Statute of Illinois.

PECKHAM & BROWN, attorneys for defendant in error, contend that the bill is drawn and our decree in the Superior Court framed on the familiar principle of the marshaling of assets, securities or funds, so that a person having a claim on one fund only, may have the benefit of that fund so far as it may be consistent with the rights of another person holding over such fund, and also over a second one, a paramount liability.

They claim no rights against the Fort Dearborn National Bank which injure it or operate to its disadvantage. The

real contention is between the defendant in error and the general creditors of the First National Bank of Helena, represented by its receiver.

As against such receiver and such creditors they claim to have a clear equitable right that the funds and securities in the hands of the Fort Dearborn National Bank shall be marshaled so that their rights shall be preserved, not sacrificed.

To render them entitled to such marshaling, it is only necessary that there should be an " interest in " or " claim on " the funds in the hands of the Fort Dearborn National Bank given by the drawing of the check involved and its delivery for value to defendant in error.

That such " interest in " and " claim on " such fund was given by such drawing and delivery—that such drawing and deliver was an assignment and transfer indeed of the fund *pro tanto*—is the doctrine of the Supreme Court of Illinois.   National Bank of America v. Indiana Banking Co., 114 Ill. 483; Abt v. American Trust & Savings Bank, 159 Ill. 467; Bank of Antigo v. Union Trust Co., 149 Ill. 343; Gage Hotel Co. v. The Union National Bank, 171 Ill. 531.

Mr. Presiding Justice Windes delivered the opinion of the court.

Plaintiffs in error claim there was error in giving Wyman the relief awarded by the decree, and that the court should have dismissed his bill for want of equity.

The Fort Dearborn Bank having appropriated the fund on deposit with it due to the Helena Bank, by crediting on its books the amount of such fund to the latter bank, before notice of the issuance and delivery to Wyman of the check by the Helena Bank, Wyman acquired no rights, either legal or equitable, which he can enforce to the prejudice of the Fort Dearborn Bank.   Niblack v. Park Nat. Bank, 169 Ill. 517; Gage Hotel Co. v. Union Nat. Bank, 171 Ill. 531; Laclede Bank v. Schuler, 120 U. S. 511.

This is conceded by counsel for defendant in error in his

brief, and that would appear to have been the theory of his bill, though the decree goes further and requires the securities to be delivered to the Montana receiver by the Fort Dearborn Bank.

It is contended by counsel for Wyman that by the delivery of the check to him for value on September 1, 1896, he acquired an "interest in" the fund of $20,523.67, deposited with the Fort Dearborn Bank to the credit of the Helena Bank, which, upon the well recognized equitable principle of marshaling assets or securities, entitles him to relief in equity, and that the decree entered does not abridge the rights of the former as against the latter bank.

We can not assent to that part of the contention that the rights of the Fort Dearborn Bank are not abridged by the decree, and the majority of the court (not including the writer) are of opinion that the proposition as a whole is untenable. In 3 Pomeroy's Eq. Juris., Sec. 1414, after stating the rule as to marshaling securities, the author gives the following, among other, exceptions: "The paramount incumbrancer shall not be delayed or inconvenienced in the collection of his debt, for it would be unreasonable that he should suffer because some one else has taken imperfect security; and the rights of third parties shall not be prejudiced."

Mr. Beach, in Modern Eq. Juris., after stating the rule as to marshaling, says, Sec. 782: "It will not be applied so as to delay the prior creditor or prevent him from realizing his whole debt, or where it would, for any reason, work injustice to such creditor."

Both authors cite numerous authorities which fully sustain them.

The Fort Dearborn Bank, therefore, clearly had the right as against Wyman to retain its securities until its debt was paid, and it should not have been required to deliver them to a foreign receiver to take beyond the jurisdiction of the Superior Court, even for purposes of collection, there being no claim that the Fort Dearborn Bank was of doubtful solvency, or that Wyman's rights would be in any way endangered by its retaining and collecting the collaterals.

The majority of the court is further of opinion that the principle of marshaling assets is not applicable in this case for the reason that before notice of the claim of Wyman, and before the bill was filed, the Fort Dearborn Bank, as it had a perfect right to do, appropriated the fund on deposit with it to the credit of the Helena Bank, thus leaving in its possession only one fund, to wit, the collateral securities on which Wyman had not and has not claimed any lien. This conclusion is based upon the theory that in order to give a court of equity jurisdiction to marshal assets, there must be at least two funds in existence when the bill is filed, on both of which one of the parties has a claim or lien, and the other party has a claim or lien on one only of the funds, or that the party having the claim or lien on both the funds wrongfully appropriated the fund on which alone the other party had a claim or lien. Generally the cases in which the doctrine of marshaling assets is discussed in the books, are cases where there are in existence, at the time the jurisdiction of equity is invoked, two or more funds or properties in which the parties claim an interest as stated. The text writers, in discussing the same subject, seem to contemplate the existence of two or more funds so situated in order that the doctrine may be invoked.

In Turner v. Flinn, 67 Ala. 531, it was held that where a senior mortgagee of two properties had so far foreclosed his mortgage as to sell all of the property which was also included in a junior mortgage, and had applied the proceeds before the junior mortgagee filed his bill asking a marshaling of the securities, there was nothing left on which the doctrine of marshaling could operate; that no two funds were left to be marshaled; that there was no fund on which each mortgagee had a lien, and therefore that no relief could be granted the junior mortgagee. The court also held that had the junior mortgagee filed his bill before the sale and application of the proceeds by the senior mortgagee, he would have been entitled to relief. This is the only case directly deciding the question, which has come to our notice, and the majority of the court are of opinion

that Wyman is not entitled to any relief, and that the decree should be and is reversed, with directions to dismiss the bill for want of equity, at the cost of defendant in error.

While the writer agrees that the decree should be reversed, because it deprives the Fort Dearborn Bank of the right to realize on its securities, he can not assent to the proposition that there is no equity in the bill, and what is now presented is the personal view of the writer. While it is true that, as a general rule, before the doctrine of marshaling assets will be applied there must be two funds or properties, on both of which one party has a claim or lien, and the other party has a claim or lien on one only of such funds or properties, I think that it does not follow necessarily, that the fund on which both the claims or liens originally rested, must, in a strict sense, be in existence at the moment of time when the aid of equity is invoked.

It is well established in Illinois that, as between the drawer and payee of a bank check given for value upon a fund in bank, the check operates as an equitable assignment to the payee of the sum of money named in the check. It transfers to the payee the right of the depositor to the money on deposit to the amount of the check, if that amount is then in bank. Bickford v. First Nat. Bank, 42 Ill. 240; Ridgely Nat. Bank v. Patton, 109 Ill. 479; Nat. Bank of Amer. v. Ind. Bkg. Co., 114 Ill. 483; Gage Hotel Co. v. Union Nat. Bank, 171 Ill. 531; 1 Beach's Mod. Eq. Juris., Secs. 333 to 335.

It would follow that when Wyman received the check, the Helena Bank had no equitable interest remaining in the fund on deposit with the Fort Dearborn Bank, except in the balance of the fund after deducting the amount of the check, and Wyman had an equitable interest in that fund to the extent of his check. The Fort Dearborn Bank was not bound to Wyman until he presented the check for payment, or at least until it had notice of the check. The Helena Bank might have subsequently given another check, which, if presented before Wyman's check, would have cut him off, but that question does not arise.

There is no question under the law, that had the aid of equity been invoked at any time before the Fort Dearborn Bank had credited the Helena Bank with the amount of the deposit, the former bank, under the doctrine of marshaling assets, would have been required to first exhaust the collateral notes held by it before appropriating the deposit fund, unless it could be said that would have had the effect of delaying or working an injustice to the Fort Dearborn Bank, in which event Wyman, on paying the bank's claim, would have been subrogated to its lien on the collateral notes.  2 Beach's Mod. Eq. Juris., Sec. 784; 1 Story's Eq. Juris., Secs. 635 and 636.

Must equity deny Wyman relief because the Fort Dearborn Bank entered on its books a credit to the Helena Bank the day before the check was presented, when that is the only change in the situation of the parties, when the Fort Dearborn Bank has the money which it would have been bound to pay on the check when presented but for the bookkeeping entries, when the interest of no third party has intervened, and only the general creditors of the Helena Bank, represented by its receiver, can be interested as against him, and when all injustice or loss to the Fort Dearborn Bank can be avoided ? I think not.

A principle of equity of very extensive application is, that equity looks to substance and not form.  1 Beach's Mod. Eq. Juris., Sec. 7.

Mr. Pomeroy, in his excellent work on Equity Jurisprudence, Sec. 363, classes this principle with others, and says that it is so fundamental and essential that it may be termed a maxim of equity.

I see no good reason why this principle may not be applied to this case and be made a basis for relief.  The substance of the situation is not changed by the entry on the bank's books.

Another most salutary principle of equity, and the basis for many forms of equitable relief, is that equity regards that as done which ought to be done (1 Beach's Mod. Eq. Juris., Sec. 8); or, as Mr. Story (Eq. Juris. Sec. 64 g) states it,

"Equity looks upon that as done which ought to have been done. The true meaning of this maxim is, that equity will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been; not as the parties might have executed them."

Mr. Beach, in commenting on this principle, Sec. 8, *supra*, says that it is of extensive application, but that "the thing which is looked upon as done is that which ought to be done, not that which might have been done."

To the same effect is 1 Pomeroy's Eq. Juris., Secs. 354 to 368.

The text writers cite numerous cases, of the greatest diversity of facts, in which this principle has been applied; notably cases where land has been by will directed, or by the acts of the parties intended to be turned into money, or *vice versa*, in cases of executory contracts for the purchase and sale of land, and generally in every kind of case where an affirmative equitable duty to do some positive act devolves upon one party, and a corresponding equitable right is held by another party.

Owing to the press of official duty, I have not been able to make an exhaustive search of the precedents, and have not found a case where this principle has been applied to facts similar to the case at bar, but that is not a good reason for failing to apply an equitable principle where the facts of the particular case warrant it.

The following cases are in some respects analogous in principle to the case at bar. I refer to them as illustrating the one or the other of the two equitable principles above stated, and as applications of the doctrine of marshaling assets when the creditor, having two funds, had released that on which the other claimed a lien, and of subrogation as related to the marshaling of assets. Ingalls v. Morgan, 10 N. Y. 178–185; McNeil v. Miller, 2 S. E. Rep. (W. Va.) 335; Campbell v. Carter, 14 Ill. 286–9; Young v. Morgan, 89 Ill. 200.

The only reason which occurs to me why it may not be

said that the Fort Dearborn Bank would not, under the facts of this case, in equity be required to do now what it would have been required to do had the check been presented before the bank entered on its books the credit, is that the bank had no notice of Wyman's claim. I think, however, that is of no importance when it is considered that the bank would not suffer, and no third person would suffer because of the lack of notice. The final acts contemplated by the Helena Bank (represented here by its receiver), by Wyman and the Fort Dearborn Bank, when the check was given, were its presentation and payment out of the fund on deposit with the latter bank. I say that was in contemplation by the Fort Dearborn Bank then, because it must be held to have contemplated doing that which was its duty, that is, to pay the Helena Bank's checks on presentation. It contemplated doing that whenever requested. It is not enough in a court of equity that the Helena Bank or the Fort Dearborn Bank might have done otherwise. It is enough that the Helena Bank gave no other check which was presented so as to defeat Wyman's equity, and that the Fort Dearborn Bank may be fully protected.

It was held in Campbell v. Carter, *supra*, that where a party purchased an estate which was subject to an incumbrance to him, a court of equity would consider it as subsisting or extinguished, as might be most conducive to his interests, unless it appeared that it was his intention, in taking a conveyance of the estate to himself, to rely on that title and discharge the incumbrance. In this line of cases the principle is well established that equity will require that to be done which ought to have been done, when no third person is injured or embarrassed. It would seem just, that as no one concerned will be injured or embarrassed, the lien of Wyman may be held as subsisting for the purpose of requiring the collaterals held by the Fort Dearborn Bank to be disposed of by it, and after its claim is satisfied, then to pay Wyman.

The writer is of opinion the cause should be remanded, with directions to the Fort Dearborn Bank to dispose of

the securities, and after it shall have been paid its claim, costs and expenses, that Wyman be paid his claim, costs and expenses, and the balance, if any, to the receiver. These views not being in accord with the majority of the court, the decree is reversed, with directions, as stated in the majority opinion. Reversed with directions.