THE NATIONAL BANK OF AMERICA

*v.*

THE INDIANA BANKING COMPANY.

*Filed at Ottawa September 21, 1885.*

1. GARNISHMENT—*form of judgment.* A judgment against a garnishee should be rendered in favor of the attachment or judgment debtor, for the benefit of the attachment or judgment creditor, who is treated as the real plaintiff, against his own debtor. Such judgment must, in form at least, be for the whole amount due from the garnishee, and whatever surplus there may be after paying the creditors entitled under the statute to share in the distribution to be made, belongs to the debtor in whose name the suit is prosecuted.

2. SAME—*surplus after paying creditors—adjustment as between the attachment debtor and garnishee.* After the creditors entitled to share in the distribution of the property attached or funds garnisheed, have been paid, if equities exist between the garnishee and the attachment debtor as to the surplus, the court, no doubt, may adjust them, and thus avoid any hardships that may arise.

3. SAME—*what creditors preferred, and in respect to what fund.* Under section 37 of the Attachment act, property, real and personal, attached, and funds in the hands of a garnishee, are placed on the same footing, and are held, from the time of the levy and service of the writ, for the benefit of all the creditors of the attachment debtor who shall obtain judgments against him within the time and in the manner specified in the statute; and such fund can not be appropriated to the payment of any other creditors until those so entitled to share in the same have been ascertained and paid.

4. SAME—*transfer of the fund by bank check drawn before and after service on the bank.* Where a depositor in a bank, before the service of process upon the bank as garnishee, at the suit of a creditor of the depositor, drew a check in favor of another, which was forwarded to the bank, and was by it paid in due course of business after the service of the writ, and charged to the account of the depositor, it was *held,* that the bank, as garnishee, was entitled to credit for the amount of the check so paid.

5. But if a bank pays checks drawn on it after it is served with garnishee process, it can not be allowed credit therefor as against the rights of creditors of the depositor entitled to share in the funds garnisheed.

6. SAME—*applying the fund to payment of obligation of the depositor to the bank.* Where a depositor indorsed a promissory note of a third person, made payable to his order, and discounted the same in a bank where he had funds to his credit, it was *held,* that a payment of the amount due on such note by the indorser, to the bank, out of his funds on deposit, after the service of garnishee process upon the bank at the suit of a creditor of such indorser, could not be allowed the bank as a set-off, the indorser's liability to the bank being that, only, of a surety, and contingent.

7. BANK CHECK—*as a transfer of money deposited, pro tanto.* If a depositor draws a check upon his banker who has funds to an amount equal or greater, it operates to transfer the sum named in the check to the payee, who may sue for and recover the same in his own name.

8. SAME—*check in favor of cashier, whether evidence of fraud.* The fact that a check is drawn by a depositor of funds in a bank, in favor of the cashier of such bank, just previous to the service upon the bank of garnishee process, is not of itself evidence of fraud or want of good faith. It is as lawful for an attachment debtor to draw his check in favor of the garnishee as in favor of any one else, if done in good faith before the service of process, and the garnishee will be entitled to credit for the amount named in the check, in the absence of evidence impeaching the transaction for fraud.

9. SAME—*by what law governed, when drawn in one State and payable in another.* A check drawn by a depositor in the State of Indiana, on his banker, payable in this State, will be construed by the laws of this State, and operate to transfer the sum named therein in accordance with the laws of this State, notwithstanding a different rule obtains in the other State.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

Messrs. Jewett, Norton & Larned, and Mr. W. C. Goudy, for the appellant:

The statute does not direct any judgment against a garnishee for more than the amount of the plaintiff's judgment against the defendant, and costs. Garnishment is in the nature of process to obtain satisfaction of a judgment. *Gibbon* v. *Bryan*, 3 Bradw. 298; *Chanute* v. *Martin*, 25 Ill. 63.

The only interest of the attaching creditor is in the collection of his debt. As against the garnishee, no rights or privileges should be given to the attaching creditor, which he is not clearly entitled to demand. *Railroad Co.* v. *Weaver*, 54 Ill. 319; *Haywood* v. *Collins*, 60 id. 328; 12 Bradw. 450.

Sections 6 and 8 of the Attachment act direct the levy upon property, credits, etc., of sufficient value to satisfy the plaintiff's claim, and costs of suit; and the bond to release the levy, etc., is to be conditioned only for the payment of the plantiff's claim, and costs.

It is laid down in Drake on Attachments, (5th ed.) sec. 663, that "whatever the amount of the garnishee's indebtedness to the defendant, or of the defendant's effects in his hands over and above that of plaintiff's judgment against the latter, no judgment can be taken against him for more than sufficient to cover plaintiff's claim against the defendant, and costs."

The effect of the checks was to transfer to the holder the sums named therein. *Brown* v. *Leckie*, 43 Ill. 497; *Union National Bank* v. *Oceana County Bank*, 80 id. 212.

The law of the place of performance governs. *Andrews* v. *Pond*, 13 Pet. 65.

The garnishee was entitled to credit for the A. S. White note. It was to demand of the garnishee, and was a set-off, whether due or not. Attachment act, sec. 13.

Mr. A. B. JENKS, Messrs. PECKHAM & BROWN, and Messrs. STARR & EHRLICH, for various creditors for whose use the judgment was taken:

The defendant, for the uses stated in the judgment, was entitled to judgment for the full amount in the hands of the garnishee at the time of the service of the plaintiff's writ, to-wit, August 10, 1883.    *Hitchcock* v. *Watson*, 18 Ill. 289; *Stahl* v. *Webster*, 11 id. 511; *Gillilan* v. *Nixon*, 26 id. 50; *Farrell* v. *Pearson*, id. 463; *Rankin* v. *Simonds*, 27 id. 352; *Cariker* v. *Anderson*, id. 358; *Walsh* v. *Horine*, 36 id. 238; *Chittenden* v. *Rogers*, 42 id. 95; *Towner* v. *George*, 53 id. 168; *Webster* v. *Steele*, 75 id. 544; *Warne* v. *Kendall*, 78 id. 598; *Fire Ins. Co.* v. *Gunning*, 81 id. 236; *Haines* v. *O'Conner*, 5 Bradw. 213; *Railroad Co.* v. *Mason*, 11 id. 525.

A garnishee is liable for moneys coming to his hands after service of process on him.    *Young* v. *First Nat. Bank*, 51 Ill. 73; *Wilcus* v. *Kling*, 87 id. 107; *Wheeler* v. *Emerson*, 45 N. H. 546.

The garnishee was not entitled to credits for the amounts paid by it for the use of the defendant after service of process.    *Wilder* v. *Whitehead*, 32 Vt. 765; *Parker* v. *Parker*, 2 Hill's Eq. 35; *Smith* v. *Clinton Bridge Co.* 13 Bradw. 572.

The checks being drawn and delivered in Indiana, are governed by the laws of that State.    By the Indiana law, the drawing and delivery of a check is not an assignment of so much of the fund.    *National Bank* v. *Second National Bank*, 69 Ind. 479.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The record in this case shows that on the 10th day of August, 1883, the Metropolitan Grain and Stock Exchange commenced a suit in the Superior Court of Cook county, by attachment, against the Indiana Banking Company,—a corporation existing under the laws of Indiana, and having its

·office for the transaction of its business in that State,—for an alleged indebtedness, as stated in the affidavit, of $1563.63. The usual bond, as the statute requires, was filed, and a writ of attachment was issued, in which the National Bank of America was named as garnishee, and which was served upon such garnishee on the 10th day of August, 1883. A declaration was filed, and also the usual interrogatories in such cases, and as the defendant in attachment was a foreign corporation, publication was made as to it, as is authorized to be done by the statute, and such further proceedings were had that afterwards, on the 2d day of October, 1883, the plaintiff recovered a judgment against the attachment debtor for the sum alleged in the affidavit to be due. On the same day, the garnishee, the National Bank of America, answered the interrogatories that had been filed in court, and afterwards, by leave of court, it filed a supplemental answer, in which the items of credits which it was insisted the garnishee would be entitled to as against the rights of the attaching creditors, were more definitely stated. It appears from its answer, that on the 10th day of August, 1883, (that being the date of the service of the writ,) the garnishee had on its books, to the credit of the attachment debtor, the sum of $13,878.61, and that afterwards, on the 10th and 11th days of the same month, further sums were received, making the aggregate amount received prior to the filing of such answer, to the credit of the Indiana Banking Company, $16,288.24. By its answer the garnishee claims credit for ·certain sums paid after the service of the writ upon it, on account of the attachment debtor, which will be noticed in the sequel. Most, if not all, of the items claimed by the garnishee as against the rights of the attaching creditors, were disallowed by the trial court, and judgment was rendered against the garnishee for the sum of $16,000, for the "use ·of the Metropolitan Grain and Stock Exchange, and for the use of such other attaching creditors as are by law entitled

to share in the proceeds of this judgment." That judgment was affirmed in the Appellate Court for the First District, and the garnishee brings the case to this court on its further appeal.

Of the questions discussed as arising on this record, most, if not all of them, excepting those relating to the items of credits claimed by the garnishee, have been settled by previous decisions of this court. The cases on this subject are numerous and consistent, and it would be unwise to permit the definitiveness of these decisions to be further challenged, or to discuss the question decided, anew. No necessity appears for so doing. It has been uniformly held, since the decision in *Stahl* v. *Webster*, 11 Ill. 511, that by the practice which obtains in this State, the judgment against the garnishee must be rendered in favor of the attachment or judgment debtor, for the benefit of the attachment or judgment creditor, who is treated as the real plaintiff, against his own debtor. This, it is claimed, is according to the analogies of the law, for in all actions at law the suit must be in the name of the party in whom is the legal interest of the subject matter. It is equally well settled the judgment must, in form at least, be for the whole amount due from the garnishee, and whatever surplus there may be after paying the creditors entitled under the statute to share in the distribution to be made, belongs to the debtor in whose name the suit is prosecuted. That is necessary in order to hold the funds in the hands of the garnishee for whomsoever shall appear, under the 37th section of the statute, to be entitled to share in the proceeds of the property or funds attached. The principle is, the judgment against the garnishee in favor of the debtor in the attachment cause stands as security or as a fund, in which the other attachment creditors may participate. Of course, when these respective claimants are paid the attaching creditors can have no further interest in the collection of the judgment against the garnishee, if it is in

excess of the aggregate amount of their several claims. After the creditors have been paid, if equities exist between the garnishee and the attachment debtor as to any surplus, no doubt the court would adjust them, and thus avoid any hardships that might arise. That the 37th section of the Attachment act applies to purely garnishee proceedings, has also been frequently held by this court. *Stahl* v. *Webster, supra; Gillilan* v. *Nixon,* 26 Ill. 50; *Farrell* v. *Pearson,* id. 463; *Rankin* v. *Simonds,* 27 id. 352; *Cariker* v. *Anderson,* 27 id. 358; *Towner* v. *George,* 53 id. 168; *Webster* v. *Steele,* 75 id. 544; *Warne* v. *Kendall,* 78 id. 598; *Imperial Fire Ins. Co.* v. *Gunning,* 81 id. 236. Other cases in this court might be cited announcing the same doctrine.

But the practice in such cases has been so long settled it does not admit of further discussion. The principles of the former decisions have been recently restated by this court in the case of *Reeve* v. *Smith,* 113 Ill. 47, where it was said, in construing the 37th section of the Attachment act, (Rev. Stat. 1874,) that property, real and personal, attached, and funds in the hands of the garnishee, are placed on the same footing, —that is, when attached, such property or funds are appropriated from that time to the payment of a certain class of judgment creditors specifically enumerated. From the time of the levy or the service of the writ, the property or funds are held, by virtue of the statute, for the benefit of all the creditors of the attachment debtor who shall obtain judgments against him within the time and in the manner specified in the statute. It is the whole property or funds attached, and not any specific part or portion, that is held, until it shall be ascertained who or what creditors are entitled to share in the proceeds. Creditors who do not choose to put their claims in judgment, by attachment or otherwise, within the time limited by the statute, are not permitted to share in the proceeds of the property or funds attached,—certainly not until the claims of such attachment or judgment creditors have been satisfied.

Creditors of the attachment debtor ought not to be permitted to obtain an inequitable advantage in a fund appropriated by law for a specific purpose, by taking an assignment of it before the time shall arrive for distribution. That would contravene the positive provisions of the statute, which will not be sanctioned. The trial court followed closely the practice as indicated in the former decisions of this court, in rendering the decision in this case, and its judgment in that respect is approved.

It only remains to be considered whether there are any items of credits which ought to have been allowed to the garnishee against the attaching creditors, by the trial court. It is thought there is error in the record in this respect. It seems the case was submitted to the court, by agreement of the plaintiff in attachment, and the garnishee, for trial as to the liability of the garnishee on the facts as stated in its answer. There can, therefore, be no controverted questions of fact in the case,—otherwise the finding of the trial and Appellate courts, as to the amount due from the garnishee to the attachment debtor, would be conclusive on this court. The amount of funds in the hands of the garnishee at the date and subsequent to the service of the writ, is admitted, and it is purely a question of law what deductions and set-offs the garnishee is entitled to on the facts stated in his answer, as against the funds in his hands, on account of payments made on orders of the attachment debtor, or otherwise.

Section 13 of the Garnishment act provides: "Every garnishee shall be allowed to retain or deduct out of the property, effects or credits in his hands, all demands against the plaintiff, and all demands against the defendant, of which he could have availed himself if he had not been summoned as garnishee, whether the same at the time are due or not; * * * and he shall be liable for the balance only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs

and injuries." It appears from the answer, the garnishee, after the service of the writ upon it, paid two checks—one for $4.50, dated at Indianapolis, August 7, 1883, payable to the order of Henry Frommeyer, and one dated at the same place August 9, 1883, for $6400, payable to the order of E. B. Lathrop, cashier. Both checks arrived in due course of mail, and were paid in the ordinary course of business on the 11th day of August, 1883. Another item of indebtedness paid on the same day was a note of A. S. Wright & Co., made payable to the order of the attachment debtor, and by it indorsed, and which had been, previous to the service of the writ, discounted by the garnishee for the attachment debtor. On the 11th day of August, 1883, the attachment debtor directed this note should be paid out of funds to its credit on the books of the garnishee, which was done. It appears the note was still in the hands of the garnishee, and on receiving orders to do so, the sum of $4916.39 was charged to the attachment debtor as a credit on the fund in the hands of the garnishee, in payment of the note. It also appears that on the 13th, 14th and 15th of August, the garnishee paid several small drafts drawn on it by the attachment debtor. All of these payments were made after the service of the writ upon the garnishee, and it is insisted they were made in fraud of the rights of the attachment creditor.

As respects the check for $4.50 and the one for $6400, both of which it seems were drawn by the depositor on the fund on deposit with the garnishee before the service of the writ, and which were paid in due course of business, although paid after the service of process, the garnishee should have been allowed a credit for the amount of such checks on the funds in its bank, as against the attaching creditors. It was held in this court, in *Brown* v. *Leckie*, 43 Ill. 497, that when a depositor draws a check on his banker who has funds to an equal or greater amount, it operates to transfer the sum named in the check to the payee, who might sue for and

recover the same from the depositary.    The transfer of the
check, it was said, carried with it the amount named in the
check to each successive holder.    The same doctrine was
restated in *Union National Bank* v. *Oceana County Bank*, 80
Ill. 212, and it was further held, in the latter case, that after
such check had passed into the hands of a *bona fide* holder, it
was not in the power of the drawer to countermand the order
of payment.    The two checks first named,—the one for $4.50,
and the one for $6400,—come within the operation of the
rule stated.    Both of them were drawn by the depositor on
its banker prior to the service of process, and at a time when
there were funds on deposit more than sufficient to pay them.
The drawing of the checks, under the decisions of this court,
operated precisely as if the money had, in fact, been drawn
out of the bank before the issuing and service of the process
of garnishment.    It is the undeniable right of the depositor
at any time to withdraw his funds on deposit, and if it is
done before the rights of third parties attached, there can be
no ground for complaint.    That he may do by drawing his
check upon such depositary, in the usual course of business,
as lawfully as in any other way.    That was done in this case.
The legal effect of drawing these two checks was the reduction
or drawing out of the bank the amounts therein specified, and
lessen the fund to that extent that was subject to attachment,
although not presented for payment until after process was
served upon the garnishee.    It is suggested the check for
$6400 may not have been drawn in good faith, and in the
usual course of business.    How that may be there is nothing
in this record to show.    That which is said to impeach the
transaction is, the fact the check is made payable to "E. B.
Lathrop, cashier."    Who "E. B. Lathrop, cashier," is, does
not appear from anything in the answer; but it is said the
appeal bond in this case is signed by "E. B. Lathrop, cashier,"
and it is therefore concluded he is the cashier of the defendant
bank.    Be that as it may, the transaction may still be con-

sistent with commercial dealings. It would be as lawful for the attachment debtor to draw its check in favor of the garnishee as in favor of any one else, and if done in good faith, it was just as rightful. If the check was not *bona fide*, as is suggested, and after the money was transferred to the debtor bank it still belonged to the attachment debtor, of course it would be liable to the attachment. That is a matter of defence which does not appear in the present record.

It is made a point against the allowance of these checks as credits or reductions from the funds in the hands of the garnishee, that by the laws of Indiana the drawing of checks by a depositor on his banker does not operate to transfer the sums named in them to the payee, as is the rule in this State, and for that reason they are not proper credits for the garnishee. It is a sufficient answer to the position taken, the law of the place of the performance of a contract must govern. The checks, although drawn in the State of Indiana, were made payable in this State, and hence the law of this State is applicable, and must control. It will be noticed the check on which a recovery was allowed in *National Bank* v. *Oceana County Bank, supra,* was drawn in another State on a bank in this State. The principle of that case is conclusive of the same point in the case being considered. That being so, under the laws of this State, by the act of drawing these two checks, the amount of the same was transferred from the depositor to the holder, and the garnishee will therefore be entitled to a credit for the sums specified in them, unless it shall be made to appear the check for $6400 was not drawn in good faith, and that the money, after it was transferred to the garnishee, was still the money of the attachment debtor.

The other checks paid by the garnishee do not appear to have been drawn before the service of the writ, and as they were paid after the service of process, that brings them within the operation of the rule stated in *Reeve* v. *Smith, supra,* which forbids any assignment or transfer of the funds attached after

the service of the writ and before the time for distribution, and as to them no credits or reductions should be allowed to the garnishee, as the payments of them were made in fraud of the rights of the attaching creditors. Nor should any credit or deduction or set-off be allowed to the garnishee on account of the amount charged to the attachment debtor, in lieu of the note of A. L. Wright & Co., held by the debtor bank at the time of the service of the writ of attachment. It was not a debt or demand due either from the plaintiff or defendant to the garnishee, and it was not an item for which a deduction or set-off might be allowed under the statute. It was simply the debt of A. L. Wright & Co., as to which the attachment debtor was a mere surety or indorser in case default should be made in its payment by the principals. That might never occur. What was done was equivalent to an attempt to buy back the note by the attachment debtor, and in that way withdraw the amount paid from the fund attached. This the law will not permit after the service of the writ upon the garnishee.

On account of the errors indicated in this opinion, the judgment of the Appellate Court will be reversed, and the cause remanded to the Superior Court.

*Judgment reversed.*