## Robert T. Harrington, for use, etc.,v. The First National Bank of Marseilles et al.

1. CHECKS—*As Assignments of Funds in Bank—Garnishment.*—A check drawn upon a bank by a depositor operates as an assignment of the amount stated, to the payee thereof, not only of funds then in bank, but also of funds of the drawer received thereafter. If at the time the checks are presented for payment the drawer has funds in the bank to meet them, the holders become entitled to payment, and a subsequent garnishment will not affect such right.

2. GARNISHMENT—*With Notice of a Previous Assignment by Check.*— If a garnishee has notice of the previous assignment of the funds in his hands by check after he is served with process and before he answers or pays out the funds or is subjected to any other liability on account thereof, the assignment by check is protected as against the garnishment.

3. SAME—*Status of the Garnisheeing Creditor.*—A garnisheeing creditor stands in the shoes of his debtor, whose name he must use in the suit, and to whose legal rights as they existed at the time garnishee process was served, he is confined.

4. SAME—*Effect of Drawing a Check.*—A person may draw a check in the reasonable expectation of having funds in bank to meet it when

presented, and by doing so impliedly contracts with the drawee that funds shall be there to meet it when presented.

5. BANKS AND BANKING—*Rule as to Checks.*—The rule is, that as to the bank on which a check is drawn, there is no appropriation of the fund until the check is presented for payment. Checks actually drawn before garnishee summons is served, though not presented until afterward, are entitled to priority of payment out of the fund on hand when the garnishee summons was served, although the bank had then no knowledge or notice of the checks.

6. SAME—*Where a Check Exceeds the Amount on Deposit.*—A bank is not obliged to make a partial payment upon a check exceeding the fund in bank subject to check, and is entitled to take up the check as evidence for its payment.

7. NOTICE—*Of Holding, etc., Not a Presentation for Payment.*—Written notice and demand with copy of check by the holder can not be treated as a presentation for payment.

**Garnishment.**—Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in this court at the May term, 1899. Affirmed. Opinion filed October 12, 1899.

CYRUS WALKER RICE and SAMUEL P. HALL, attorneys for appellant.

The general rule established by courts in most of the United States is that a check drawn on a bank does not operate as an assignment or transfer of funds on deposit to the amount of the check, transferring title thereto to the checkholder until the check has been accepted by the bank, and until such acceptance, the holder can not sue the bank. Am. & Eng. Enc. Law (1st Ed.), Vol. 1, page 837; Am. & Eng. Enc. Law (2d Ed.), Vol. 2, page 1065.

The Supreme Court of Illinois, however, have, in regard to checks drawn against sufficient funds, established a different rule, viz.: that such a check transfers to its holder title to the funds of the drawer sufficient to pay it, and that the holder, if he presents the check for payment, and the bank refuses to pay, may recover in his own name the amount of the check from the bank, provided the bank, on presentation, continues to have sufficient of the drawer's funds to pay it; but in all such cases decided by the Illinois Supreme Court in which a check is held to operate as a transfer of title to the fund, the fund itself was in existence

in the hands of the bank at the time the check was presented. This element enters into the definition of the words " bank check " whenever that expression is used by our Supreme Court as signifying an instrument which passes to the holder title to funds of the drawer. Bank of America v. Indiana Banking Co., 114 Ill. 491; Bickford v. First Nat. Bank, 42 Ill. 242; Munn v. Burch, 25 Ill. 35.

BUTTERS, CARR & GLEIM, attorneys for appellees.

Notice to garnishee, before answer, but after the proceeding is begun, of the assignment of claim of his creditor made anterior to the garnishment proceeding, is sufficient to protect rights of assignee. Knight v. Griffey, for use, etc., 57 Ill. App. 583, 161 Ill. 85; Nat. Bank of America v. Indiana Bank. Co., 114 Ill. 486.

A bank check in this State transfers the money of the drawer in the bank to the drawee the moment the check is delivered, and from that moment it ceases to be the property of the drawer, and belongs to the drawee or his assignee. McAllister v. Oberne et al., 42 Ill. App. 287; Munn et al. v. Burch et al., 25 Ill. 35.

Between a garnisheeing creditor and interpleader, any transaction not tainted by fraud and fact, which gives to the interpleader, as against the original debtor, the fund in question, is good against the garnisheeing creditor. Harlev et al., for use, v. Harlev, 67 Ill. App. 139; Hutmacher v. The A. B. Brewing Co., 71 Ill. App. 154.

MR. JUSTICE DIBELL delivered the opinion of the court.

Robert T. Harrington drew and delivered two checks upon the First National Bank of Marseilles; one to John Naughton for $284.70, dated September 28, 1897, and one to J. F. Trumbo, for $202.87, dated September 29, 1897. Each was presented to the bank for payment about two days after its date, and payment was refused for want of funds, and the holders took them away. On October 18, Trumbo brought his check back to the bank and left it with the cashier, duly indorsed by Trumbo, and it remained

there till nine days after the bank was served with garnishee process in this case, when the cashier returned the check to Trumbo by mail. After the checks were first presented the bank received several sums to the credit of Harrington, which, after repaying an overdraft, left in the bank to his credit $393.15. Cyrus R. Rice recovered a judgment for $6,000 against Harrington in the Circuit Court of La Salle County, and had execution issued thereon, and it was returned *nulla bona*. On November 2, 1897, he began this suit in garnishment against the bank, and had service on the bank that day. Shortly thereafter Naughton and Trumbo each served upon the bank a written notice, with copy of check attached, notifying the bank of the issue of the check; that it had been presented for payment and payment refused; that he still held the check; that it was still unpaid (except that Naughton's notice said $50 had been paid on his check), and that he proposed to hold the bank responsible for the payment of the check out of any moneys of said Harrington which had been deposited or come into the possession of the bank, " which are, by virtue of said check, due to me." After receipt of said notices the bank answered the interrogatories filed by Rice and set up all the facts above stated. Naughton and Trumbo appeared as claimants of the fund, as allowed by statute, and filed interpleas, setting up their title to the fund by virtue of said checks. There were other matters and other parties before the court, not involved in this appeal. A jury was waived and the proofs heard. All parties stipulated that a certain check, held by Gaylord States, for $24.50, should first be paid out of the fund in the bank. Naughton and Trumbo stipulated to share *pro rata* the remainder of the funds in the bank and to surrender their checks to the bank. The court held the rights of Naughton and Trumbo paramount to those of Rice, and that upon surrender of their checks to the bank they were entitled to the remainder of the money in the bank to the credit of Harrington after payment of the check to States. Judgment was entered accordingly, and Rice, the garnisheeing creditor, prosecutes this appeal.

These checks operated as an assignment to the payees thereof, not only of funds then in bank but also of funds of the drawer, which might thereafter be received. If at any time, when they were presented for payment, the drawer had funds in the bank to meet them, the holders of the checks became entitled to payment. (Gage Hotel Co. v. Union National Bank, 171 Ill. 531.)

Garnishment will not cut off a previous assignment of a fund. If the garnishee has notice of the previous assignment, after he is served with process and before he answers or pays out the funds, or is subjected to any other liability on account thereof, the assignment is protected against the garnishment. This is so because the garnisheeing creditor stands in the shoes of his debtor, whose name he must use in the suit, and to whose legal rights, as they existed at the time garnishee process was served, he is confined. (Knight v. Griffey, 161 Ill. 85; Bank of America v. Indiana Banking Co., 114 Ill. 483; Price v. German Exchange Bank, 60 Ill. App. 418.)

Under these principles the first of these checks presented for payment after the funds came into the bank was entitled to be paid in full. On October 18th, Trumbo brought his check back to the bank and indorsed it in blank and left it with the cashier. The special reason for so doing was that it was hoped that through a judgment the bank had against certain grain in an elevator the bank might recover sufficient, more than its own claim against Harrington, to also pay this check. Trumbo testified he empowered the cashier, as his attorney, to collect the check in case the bank did recover such a surplus. This obviously meant he should collect and the bank should pay the check if the bank from that source received a sufficient sum to the credit of Harrington in excess of the bank's claim. In other words, the check was left with the cashier to be paid if a certain credit in favor of Harrington came into the bank. The evidence of the cashier shows that the fund here in dispute, which came into the bank to the credit of Harrington, was the proceeds of the sale of two carloads

of oats sold in Chicago, and credited to the bank by the commission house that sold them, and by the bank credited to Harrington, after deducting its demands, and also the proceeds of the sale of a small amount of corn likewise to the credit of Harrington.   We do not find in the evidence anything to show this was not the particular grain the parties had in mind when Trumbo left his check with the cashier.   If it was the same, then the Trumbo check was continually present in the bank for payment out of this fund up to and at the time the fund was received; and under the above authorities this worked an assignment of the fund to Trumbo to the amount of his check.   But if in fact this was a different fund, we think the presence of the check in the bank in the hands of the cashier when this fund was received, produced the same legal result.   The purpose of leaving the check with the cashier was to get payment if at any time thereafter Harrington had a credit there which would pay it.   A credit from a particular source was hoped for.   This (as we are now assuming) was a credit from a different and unexpected source.   While one source of possible credit was in the mind of Trumbo the essential thing he aimed at was to get payment from the bank out of Harrington's account.   We think its presence in the hands of the cashier should be treated as a continuous presentation for payment, and as such presentation when and after the credit to Harrington was received by the bank.   Under Gage Hotel Co. v. Union Nat'l Bank, *supra*, the fund was thereby assigned to Trumbo to the extent of his check.

Naughton's check was not again presented to the bank after its first refusal.   The written notice and demand, with copy of check, we can not treat as a presentation for payment, for the check itself was not presented and the bank could not then have paid it, if so disposed.   Naughton did not therefore acquire an assignment of the fund by presentation of the check to the bank when it held funds to the credit of Harrington.   The remaining question is whether on any grounds Naughton was entitled to the fund as against Rice, the garnisheeing creditor.   Harrington could

not defeat Rice by checks drawn after the garnishee summons was served upon the bank; but, subject to that limitation, Rice has no rights in this suit except such as he can work out in the name of Harrington. What was Harrington's contract with Naughton? If, when Harrington gave the check to Naughton, funds had been in the bank to meet it, the drawing would have been, as between Harrington and Naughton, an appropriation of the sum of money named in the check, to lie in the bank till called for. The record does not show whether there were funds then in bank to Harrington's credit or not. The check was issued after banking hours of the day of its date, and Naughton, finding the bank closed, took the check to his home on his farm, over nine miles distant, and was not able to return till two days later, and then there were no funds to meet it. But one may draw a check in the reasonable expectation of having funds in bank to meet it when presented, and by giving this check Harrington contracted that funds should be there to meet it when presented. (Gage Hotel Co. v. Union Nat'l Bank, *supra*.) True, at that time the bank was not privy to such contract, and had at that time no notice thereof, but it was nevertheless a valid contract as between Harrington and Naughton. In Nat. Bank of America v. Indiana Banking Co., 114 Ill. 483, the Bank of America was served with garnishee summons on August 10, 1883, and had funds of the debtors in its hands. On August 11, 1883, two checks were presented drawn by the debtor on August 7th and 8th, respectively, and the bank paid said checks and was held entitled to credit therefor as against the garnisheeing creditor. The rule is that as to the bank on which a check is drawn there is no appropriation of the fund till the check is presented for payment; yet these payments by the Bank of America prevailed over the prior service of garnishee summons upon it. Checks actually drawn before the garnishee summons was served, though not presented till afterward, were held entitled to priority of payment out of the fund on hand when the garnishee summons was served, though the bank had then no knowledge or notice of the checks.

This was because, as between the drawer and the payee, the check was an appropriation of the fund in the bank, and the garnisheeing creditor was bound by what bound the drawer. Here, though funds may not have been on hand when Naughton's check was drawn, and were not on hand at certain times afterward, yet funds were on hand in the bank when the garnishee summons was served, and we see no reason why, in conformity with the rules laid down in the case last cited, if the bank had paid Naughton's check after it was served with garnishee summons, it would not have been equally protected. That check was not again presented to the bank for payment. But before any liability of the bank was fixed in the garnishee suit, and long before issue was joined upon the bank's answer therein, Naughton filed an interplea claiming the fund by virtue of the check. We are of opinion that under the circumstances of this case, this was equivalent to presenting the check for payment, and equally entitles him to protection. Rice can only have what Harrington can recover subject to the limitation we have already stated. Harrington was bound by his contract to have the funds in bank to meet this check. If he had brought this suit against the bank for his own benefit, he could not thereby have avoided his previous contract with Naughton to have funds in the bank to meet his check, and could not by this suit have withdrawn the funds from the bank, as against the check. The form of this suit—garnishment, permits Nanghton to set up his rights against Harrington by interplea; and we hold his title to the fund prior and paramount to the rights of the garnishee. The same reasoning would lead to the allowance of Trumbo's claim, even if his check was not continually present for payment while in the hands of the cashier.

All this has been said upon the supposition the fund in bank was sufficient to pay both checks in full. It was not sufficient therefor, and Naughton might have been thereby defeated. A bank is not obliged to make a partial payment upon a check exceeding the fund in bank subject to check. This is a rule for the protection of the bank, which is enti-

tled to take up the check as evidence of its payment. But if the check-holder will surrender the check for the less amount in the bank, the reason of the rule is satisfied, and the bank is protected. In this case Naughton and Trumbo stipulated to surrender the checks and share the money *pro rata*. Harrington can not object to this, for it is beneficial to him; and if he can not object we think Rice can not.

The judgment is affirmed.