The demurrer to the petition was properly sustained.

*Judgment affirmed.*

DUNLAP, P. J., and VICKERY, J., concur.

---

PAIGE *v.* THE SPRINGFIELD NATIONAL BANK.

*Banks and banking — Status as collecting agent — Question for jury, when — Payment of checks — Insufficient funds — Payment of smaller checks by bank — Appropriation of deposits by depositor — Charge to jury — Duties as between drawer and payee.*

1. As a mere drawee a bank on which a check is drawn by one of its depositors may decline payment because of insufficient funds of the depositor, and pay out the depositor's balance from time to time on smaller checks, although drawn subsequent to the one on which payment was refused, and it is not the bank's duty under such circumstances to refuse payment of the smaller checks so as to build up a balance large enough to meet the first check, but if the bank, when such check was presented, undertook the duties of a collecting agent, its rights and duties depend upon the terms of the agency.

2. Whether the bank in such case assumed the duties of a collection agent is a mixed question of law and fact, to be determined by the jury under appropriate instructions of the court as to the law.

3. The mere refusal of the bank to pay the larger check furnishes no ground for the subsequent refusal of later and smaller checks, and the bank may safely pay such later checks if it has not assumed the duties of a collection agent for the holder of the first check, even though, if it had refused payment of the later checks, a balance would have been built up by deposits sufficient to pay the first check.

4. A depositor having an open checking account in a bank may, by agreement with the cashier at or before specific deposits are made, provide that such deposits shall be used to pay certain checks only; and such deposits become thereby appropriated to meet the designated checks and may not be applied by the banker to other purposes.

5. If, when the Paige check was presented to the bank for payment, the payee was informed by the cashier that it was not good, but that the bank would take it and give him credit for it, subject to collection, and credit was then given for the check on the holder's pass book, and there were facts and circumstances in evidence tending to show that the bank may have assumed the duties of a collecting agent, it is error to instruct the jury that the sole duty of the bank was to charge the check to the drawer and thus relieve Paige whenever the drawer had sufficient funds to his general credit to pay the entire check at once.

(Decided February 19, 1919.)

ERROR: Court of Appeals for Clark county.

*Messrs. Hagan & Hagan* and *Mr. William M. Rockel,* for plaintiff in error.
*Mr. George S. Dial* and *Mr. J. E. Bowman,* for defendant in error.

RICHARDS, J. (of the Sixth Appellate District, sitting by designation in place of KUNKLE, J.). On August 31, 1916, one G. A. Collier drew a check

on The Springfield National Bank in favor of
William Paige for $1,037.34.   Mr. Collier at that
time had a deposit account with the bank, but not
of sufficient amount to pay this check, and he re-
quested Paige to hold the check a few days.   Wil-
liam Paige, the payee of the check, also carried an
account in the same bank.   The check was pre-
sented by Paige to the bank on September 2d, and
the testimony is in conflict as to what occurred be-
tween him and the cashier at that time.   The cash-
ier testified that he informed Mr. Paige that money
was not then on deposit in the account of Collier
sufficient to meet the check, but that the cashier
would hold the check, credit Paige with the amount
and enter it in his pass book, subject to a deposit
which the cashier presumed Collier would make.
He testifies that he informed Paige that the check
was not then good, but probably would be a little
later, and that Paige said, "All right."   The cash-
ier testified further to the effect that some days
after that Mr. Paige again came to the bank and
stated that he was going to want to use some of
that Collier money, and was then informed that the
check had not yet been paid, but that he could go
ahead and divide it up, if he wanted to, and the
cashier would take the chance of it being made
good that afternoon, as he expected a deposit from
Collier.   Paige did, thereafter, check out a portion
of the amount represented by the check.   The testi-
mony of Mr. Paige is to the effect that he pre-
sented the check at the bank for payment, and that
it was credited on his pass book, and that he had
no conversation with regard to there being insuf-
ficient funds to pay the same or with reference to

having the check left for collection. The amount of the check was, in fact, credited on the pass book of Paige, but the cashier insists that this was done conditionally, while Paige contends that such credit was absolute payment of the check.

Collier, the drawer of the check, became bankrupt shortly thereafter, and this action was brought for the purpose of recovering of Paige the amount of the check, less the amount of the deposit of Collier applied by the bank toward the payment of the same, and less, also, the dividend from the trustee in bankruptcy of the estate of Collier. The testimony tends to show that Collier made numerous deposits in his account in the bank shortly after this check was presented to the bank, but that at no time, at the close of business in the afternoon, was there a sufficient amount in his account to pay the check in full. The amounts deposited by Collier were, in fact, used to pay smaller checks drawn subsequently to the date of the check given to Paige.

The trial resulted in a verdict and judgment in favor of The Springfield National Bank, and this proceeding in error is brought to reverse that judgment.

The questions at issue between these parties involve very interesting principles of law as to the rights and obligations of a bank and its customers on the presentation of a check which is in fact for a larger amount than the drawer of the check has on deposit at the time the check is presented. The trial court, at the request of the bank, gave the following five propositions in charge to the jury:

"1. If when Mr. Paige presented the Collier check at The Springfield National Bank he was in-

formed by the bank that the check was not good, but that the bank would take it and give him credit for it, subject to collection, and the credit was made in his pass book accordingly, that did not constitute payment of the check by the bank and Mr. ·Paige remained liable to the bank for the amount of the check unless afterwards Mr. Collier had to his general credit an amount sufficient to pay the entire check at one time.

"2. Such an arrangement did not impose on the bank the ordinary duties of a collection agent for Mr. Paige, but it was only required to hold the check at its banking house and charge it up to Mr. Collier whenever he had a balance to his credit large enough to pay the entire check at once.

"3. Such an arrangement left it still the duty of the bank to pay smaller checks of Mr. Collier that might be presented afterwards and which did not exceed the amount to his credit at the time. It was not the bank's duty to refuse payment of such smaller checks so as to build up a balance in Mr. Collier's favor large enough to pay the check left by Mr. Paige.

"4. Such an arrangement did not prevent the bank permitting Mr. Collier to overdraw his account in anticipation of deposits to be made later to cover such overdrafts, or from making any other special arrangements with Mr. Collier at his request and to suit his convenience. It did not require the bank to shape its business with Mr. Collier so as to compel the payment of the check left by Mr. Paige, but its sole duty would be to charge that check to Collier and thus relieve Paige when-

ever and if ever Mr. Collier had sufficient to his general credit to pay the entire check at once.

"5. If the Collier check was left with the bank and the credit given Mr. Paige subject to the collection of the check, then the subsequent writing up of Mr. Paige's bank book would not affect the arrangement or the rights and obligations of the parties."

The general charge of the court was along the same lines as covered by the above special instructions, and the vital and controlling matter for determination in this case is as to whether the charge is a fair statement of the law under the evidence contained in the record. This charge appears to be a fuller and more elaborate statement of the rule laid down in 7 Corpus Juris, 680, in the following words:

"Where a bank declines to pay a check because of lack of funds, it is under no obligation to the holder to reserve from future deposits a sufficient amount to meet the check, if it is again presented."

The rule as thus stated is the one applicable in the absence of any agreement between the bank and the payee of the check. The same rule is announced in *Gilliam* v. *Merchants' National Bank,* 70 Ill. App., 592, the reason being that there is no presumption that the check remains outstanding for payment. But, in the case at bar, the check was in fact left by Paige with the bank, and for this reason the bank is chargeable with knowledge that the check was not paid, if such was the fact. See also *C. M. Henderson & Co.* v. *United States National Bank,* 59 Neb., 280; *Lowenstein & Bros.* v. *Bresler,* 109 Ala., 326; *Harrington* v. *First Na-*

*tional Bank,* 85 Ill. App., 212, and *Coates* v. *Preston et al.,* 105 Ill., 470. ·

A summary of the rule is stated in 2 Morse on Banks and Banking (5 ed.), Section 450, in the following language:

"The fact of presentment for payment of an overdraft appears to have no legitimate effect whatsoever upon the balance of the customer. It creates no lien upon it of any description; no sound reason suggests itself why it should be regarded. as affecting it at all. The bank is in no possible shape the agent of the holder of such an over-check to aid in securing him payment in full; whence it seems to follow that the *simple refusal, without more,* of the larger check, furnishes no ground for a subsequent refusal of the later and smaller one.".

The rule as stated is undoubtedly applicable in a case where a check which amounts to an overdraft is presented for payment, payment refused, nothing more said, and the holder of the check carries the same away with him. But we do not understand that this rule as laid down is applicable, without qualification, to a case where the bank retains possession of the check, and evidence is introduced tending to show an arrangement between the bank and the holder of the check, which might, if the jury so find, modify what would be the rights of the parties in the absence of an agreement. See 2 Morse on Banks and Banking (5 ed.), Section 572.

We think there can be no question that if a bank credits a depositor with the amount of a check drawn upon it by another customer, and there is

no want of good faith on the part of the depositor, the act of the bank in giving the credit is equivalent to a payment in money, if nothing is said to indicate a different result, even though the bank should later ascertain that the drawer of the check was without funds to meet the same; but it is also true that the bank could have received the check conditionally. 3 Ruling Case Law, 526.

It is for the jury to say, under instructions of the court as to the law, whether the evidence introduced in this case as to what occurred when the check was presented, and, subsequently, when it is claimed permission was given to withdraw a part of the amount represented by the check, established any agreement which would govern the rights of the parties. With such evidence in the record the trial judge went too far in stating the rule as he did, without qualification, that no duty rested on the bank to apply any part of the deposits of Collier to the payment of the check given to Paige. The rights of Paige under the circumstances disclosed by the evidence would not rest solely upon the principles of law announced, without considering whether the evidence established an agreement which would impose upon the bank the duty to apply to the payment of the Paige check such unappropriated funds of Collier as were in his account, or might thereafter be deposited.

The bill of exceptions contains some evidence, which is not however very clear, tending to show that Collier, who was purchasing grain and hay, paid for the same with checks on The Springfield National Bank, and that some of these checks would be presented at the bank when there were no

funds in the bank to meet them, and that under those circumstances the cashier of the bank would call Mr. Collier on the phone, and Collier would ask that such checks be paid and promise that he would make deposits during the day to cover them. If such an agreement, made before or at the time that such deposits were made, should be established by the evidence, then the funds so deposited for such purpose would be appropriated to meet the payment of the specified checks, and money so appropriated could not properly be used by the bank in the payment of the check given to Paige. The importance of distinguishing whether funds deposited have or have not been appropriated to specific purposes is clearly indicated in the old case of *Kilsby* v. *Williams et al.*, 5 Barn. & Ald., 815. The original report of that case, published in 1822, contains the following headnote or syllabus:

"A plaintiff paid into his own bankers, a cheque of 250£, drawn upon them by a third person, which they received without any objection; and in the course of the same day the drawer of the cheque paid in a sum of money, part of which he particularly appropriated, leaving a balance unappropriated of 237£. The bankers, who were then creditors of the drawers to a large amount, wrote on the next morning, to the plaintiff, stating that the cheque was not paid, but that they would keep it in the hope of there being money to pay it; and on that day a further unappropriated balance was paid in, making altogether a sum exceeding the plaintiff's cheque. Held, that, under these circumstances, the plaintiff might maintain money had

and received against the bankers, and that the latter, being his agents for receipt of the money, could not appropriate the balance to the payment either of their own general account against the drawer, or of two cheques presented on the same day, but subsequently to that of the plaintiff, and paid by them."

See also *Johnston* v. *Parker Savings Bank*, 101 Pa. St., 597; *Wilson et al.* v. *Dawson et al.*, 52 Ind., 513, and *Bank of the United States* v. *Macalester*, 9 Pa. St., 475.

The charge to the jury in this case ignores the fact that there is a conflict in the evidence as to what occurred between Paige and the cashier of the bank, and fails to give due consideration to the claim that the bank assumed the duties of a collection agent only. If the jury should find that the conversation between them amounted to an agreement in relation to what should be done by the bank with the check and with the deposits of Collier made or to be made, such agreement might have an important bearing on the rights of the parties, and the court was in error in withdrawing from the consideration of the jury the effect of the testimony on this subject.

We find no prejudicial error in the case except in the charge of the court in relation thereto, but for error in the charge the judgment must be reversed and the cause remanded for a new trial.

*Judgment reversed, and cause remanded.*

ALLREAD and FERNEDING, JJ., concur.

## ON APPLICATION FOR REHEARING.

### (Decided April 22, 1919.)

BY THE COURT: Counsel for defendant in error contend that the bank accepted the check in controversy merely as accommodation and that it assumed no additional responsibility.

The bank's evidence upon which the case rests was to the effect that it received said check and entered the same upon the holder's pass book subject to a future deposit or subject to collection.

We can not escape the conclusion from the bank's evidence that it acted in the dual capacity of drawee and collecting agent.

As a mere drawee the bank might have refused the check and paid out the depositor's balance from time to time on smaller checks.

As collecting agent, however, the bank assumed a fiduciary relationship to the check holder. *Jones et al.* v. *Kilbreth,* 49 Ohio St., 401; *Hilsinger et al.* v. *Trickett,* 86 Ohio St., 286, and *Kilsby* v. *Williams et al.,* cited in the original opinion, *ante.*

The scope of the agency is thus stated by Judge Spear in *Hilsinger* v. *Trickett,* at page 298:

"The delivery of the certificate in the manner shown by the admitted facts was a delivery for collection; of course to result in liability on the part of the bank in case of collection, and imposing the duty of reasonable diligence in efforts to collect."

It is true that the bank in the discharge of its fiduciary obligation would be governed by the general custom of the banking business as to collections, but that limitation would not justify the bank

in assuming an attitude inconsistent with the trust or in thwarting the execution of the trust by paying the funds otherwise applicable to the plaintiff's check to the drawer or upon checks subsequently presented.

By the Ohio rule it is true that the payee of a check obtains no right or interest in the deposit unless the check is accepted. Nevertheless the drawee may by acceptance, absolute or conditional, fix an obligation in favor of the check holder to be discharged out of present or future unappropriated deposits.

The issuing of a check confers implied authority upon the drawee to accept and discharge the same out of the drawer's funds.

Whatever valid obligation is assumed by the drawee in the acceptance of a check is binding upon the drawer.

The drawer obtains no superior right by the overissue of checks, nor does the issue of a subsequent check operate as a cancellation of a former one. The rule that a bank may refuse a check in excess of the deposit, and honor subsequent checks within the balance, applies only where the bank acts exclusively as drawee, and assumes no obligation to the holder of the larger check. Counsel for defendant in error present a persuasive argument in favor of the contention that the bank was not under obligation to make a *pro tanto* payment upon the Paige check without special authority. The cases of *Lowenstein & Bros.* v. *Bresler, supra,* and *First Natl. Bank* v. *First Natl. Bank,* 127 Tenn., 205, are cited. The case at bar differs somewhat from these cases because the collecting agency

in the instant case was of a continuing character. The bank agreed to hold the Paige check for a future deposit. In both the Alabama and Tennessee cases the checks were returned before the deposit became sufficient to pay the checks. In neither of these cases did the bank undertake to hold the check for a future deposit. Here the bank, pursuant to the agreement, held the Paige check while deposits were made in excess of the amount of the check. There was evidence from which the jury might have found that Collier's unappropriated deposits amounted to more than the Paige check, and the jury should, therefore, have been instructed as to this feature of the case.

Counsel for defendant in error contend that there was no such acceptance of the Paige check as to create an obligation against the bank, citing *Elyria Savings & Banking Co.* v. *Walker Bin Co.,* 92 Ohio St., 406. The check there had been accepted and paid by the drawee bank upon a forged endorsement, and the question was whether such acceptance operated in favor of the real owner of the check. The court held that it did not. The decision was based upon the theory that the payment under the forged endorsement was void; that the check remained a living instrument under the law merchant and that a written acceptance was required to bind the drawee. It is evident, we think, that the court did not intend to cover the question of acceptance for payment, or of a constructive acceptance, under other sections of the negotiable instrument act.

Here the check was presented for payment and entered upon the depositor's pass book. This would

create a *prima facie* obligation in favor of the payee as depositor, and against the bank, and the burden would be upon the bank to defeat that obligation by showing the nonfulfillment of the condition upon which the check was accepted for payment. But independent of that, if the bank assumed the fiduciary relation of collecting agent, it stepped outside the strict rules of the law merchant and became bound by the general rules of the law of agency, subject only to banking customs in making collections.

This is an important case and we have endeavored to give it the consideration which its importance demands, but, upon full consideration, are unable to escape the conclusion that the former decision should be adhered to.

*Judgment adhered to on rehearing.*

RICHARDS, ALLREAD and FERNEDING, JJ., concur.