Ignazio Ippoliti for use of E. J. Fortier, Appellee, v. John Puglisi and Gaetano Indorante, Appellants. C. M. Granger, Intervener, Appellee.

### Gen. No. 7,666.

GARNISHMENT—*right of assignee of judgment debtor to attack sufficiency of answer of garnishees admitting indebtedness in excess of amount of judgment where plaintiff does not object to answer.* Where the answer of garnishees admits an indebtedness to the judgment debtor in a sum greater than is required to satisfy the judgment, a third person will not be permitted to intervene and set up a claim that there is due from the garnishees a sum greater than admitted by their answer, and that such excess is payable to intervener as assignee of the judgment debtor.

Appeal by defendants from the County Court of Kankakee county; the Hon. JOHN H. GILLAN, Judge, presiding. Heard in this court at the April term, 1926. Reversed and remanded. Opinion filed July 27, 1926.

MILLER & STREETER, for appellants.

H. H. WHITTEMORE and C. M. GRANGER, for appellee.

Mr. Presiding Justice Partlow delivered the opinion of the court.

This is an appeal from a judgment of the county court of Kankakee county entered in a garnishee proceeding. In 1913, Ignazio Ippoliti, John Puglisi, and Gaetano Indorante formed a partnership in the city of Kankakee to engage in the meat and grocery business. In 1918, Ippoliti sold his interest in the business but later reentered the partnership. In 1920, Puglisi sold his interest and went to the old country where he remained for about six months. Upon his return, on February 7, 1921, the partnership was again reformed. During the absence of Puglisi, Ippoliti took charge of the financial affairs of the firm. He handled the money, looked after the receipts and expenditures, paid the bills, and furnished to Indorante slips showing the amount of receipts and expenditures. After Puglisi returned this method was continued. It is apparent that the books were very crudely kept. On December 31, 1921, there was a settlement which showed a discrepancy of less than $50. Later another error of $100 was discovered, which was rectified. About July 1, 1922, Ippoliti wanted to sell his interest and the other two partners agreed to buy. The finances were again checked and it appeared that there was $4.33 remaining in the hands of Ippoliti. A written contract was entered into in which it was agreed that all outstanding accounts should be collected by the two remaining partners and, after the payment of certain indebtedness therein specified, the balance was to be divided into three equal parts between the partners. A few days after July 1, the two remaining partners were notified by the bank with which they did business that there was an overdraft of $188. The attention of Ippoliti was called to this overdraft, and Puglisi testified that he requested Ippoliti to go to the store and check over the books and try to find the mis-

take.   Ippoliti agreed to do so, but failed to keep his promise.   Puglisi testified that he said: "I know the bank got to be a little short but not that much."   The two partners paid the overdraft out of their own funds upon the theory that the money for the payment of the same was in the possession of Ippoliti.   Shortly after July 1, 1922, Ippoliti went to the old country. After he had been there 8 or 10 months he sent a letter to his former partners in which he authorized them to pay any money due him to John Cardosi of Kankakee.   The two partners paid to Cardosi certain funds in their hands which had been collected, but they first deducted $188, which they had paid to the bank and explained this fact to Cardosi.   In September, 1923, Ippoliti returned from the old country and his attention was again called to this overdraft.   He checked the books but did not find the error.   On November 11, 1923, it is claimed there was a settlement between the three partners in which it was agreed that the $188 should remain as a deduction against any amount due Ippoliti, and a receipt was given by Ippoliti to the former partners which they claim was in full settlement of all their affairs up to that date. This is disputed by Granger, the intervening petitioner, and it is claimed by him that Puglisi agreed to repay the amount, if the error was discovered, and that the settlement of November 11, 1923, was not in full of this claim.   On October 29, 1924, Ippoliti, in writing, assigned all of his remaining claims against his former partners to Claude M. Granger, the intervener.   Some time prior to this assignment by Ippoliti, E. J. Fortier, appellee herein, obtained a judgment in the county court of Kankakee county against Ippoliti for $95 and costs, the total judgment and costs being $106.75.   An execution was issued upon this judgment and returned no property found.   On October 18, 1924, Fortier summoned Puglisi and Indorante

as garnishees on said judgment. Puglisi and Indorante filed their answer in which they alleged they had in their possession funds due Ippoliti amounting to $126.83. Granger, as assignee of Ippoliti, then filed his intervening petition in which he claimed by assignment any balance due Ippoliti. The court took evidence consisting of the testimony of Granger on the one hand, and Puglisi on the other hand. Ippoliti did not appear and did not testify. In fact, Granger introduced the testimony on behalf of the judgment creditor. It is claimed by the judgment creditor, and by Granger, that the garnishees did not make true discovery of all money due; that in addition to the $126.83 set out in their answer, the garnishees were liable for two-thirds of the $188 which amounted to $125.33, and that this, together with the $126.83, made a total of $252.16, in the hands of the garnishees. On the other hand, Puglisi testified to the facts with reference to the transactions as above stated, alleged the settlement of November 11, 1922, and claimed that the only amount due was the $126.83. The court found that the garnishees had in their possession $252.62, of which amount $106.75 was to be paid to the judgment creditor in full of his debt and costs, and the balance paid to Granger, the intervening petitioner as assignee of Ippoliti.

Several questions are raised upon this appeal but the determination of one of them will settle the entire controversy. The first question is whether in a garnishee proceeding, where the garnishees admit there is more due than is necessary to satisfy the judgment and costs, a third person can intervene and claim there is more due from the garnishees than the amount set forth in the answer, which additional amount is claimed by the intervener under an assignment by the judgment debtor to the intervener.

Proceedings in garnishment are purely statutory and cannot be extended to cases beyond the provisions of the statute. *Siegel Cooper & Co. v. Schueck*, 167 Ill. 522. Section 7, chapter 62 [Cahill's St. ch. 62, ¶ 7], of the statute provides that when the plaintiff shall allege that any garnishee hath not truly discovered the property in his hands, the court shall immediately proceed to try such cause as against such garnishee without formality or pleading. If the finding shall be against the garnishee, judgment shall be given against him in the same manner as if the facts had been admitted by him with costs of such trial. If the findings shall be in favor of the garnishee, he shall recover his costs against the plaintiff. In case the garnishee admits indebtedness to the judgment debtor, he shall not be liable for costs. Section 11 [Cahill's St. ch. 62, ¶ 11] provides that if it appears that any of the property in the hands of the garnishee is claimed by other persons the court shall permit such claimant to appear and maintain his rights.

Under section 7, the plaintiff is the only person authorized to question the return of the garnishees. No such right is vested in any third person who may desire to intervene. If the plaintiff is not satisfied with the return, he may raise the question of its insufficiency and have the matter determined in a summary manner without pleadings. To hold that where the plaintiff does not question the return, or where the returns show a sufficient amount to pay the judgment, that any third person may intervene and insist that the return is not correct would be to enlarge the statute and read into it provisions which it does not contain. It would require the garnishees in a summary manner, without formal pleadings, at their own cost and peril, to litigate with third parties questions which are not a part of the garnishee proceedings. Such was not the intent and purpose of the statute. The pur-

pose of the statute was to provide a method by which the plaintiff could compel the garnishees to disclose the funds in their hands sufficient to satisfy the judgment. If the garnishees disclose sufficient funds to pay the plaintiff's claim then the plaintiff has no right to compel litigation of questions not germane to his claim.

When the garnishees filed their sworn answer in this case it did not specify any amount in their hands. The plaintiff in his replication alleged that they had not truly made answer to his interrogatories, whereupon the garnishees filed under oath an amended answer which alleged that they had $126.83 in their hands belonging to the judgment debtor. The replication of the plaintiff to the original answer was refiled to the amended answer. This replication did not state in what respect true answers had not been made to the interrogatories, whether these answers were untrue as to the amount due in the hands of the garnishees, or whether the answer was untrue in other respects. The question of the amount of the fund in the hands of the garnishees was not specifically raised by the replication and was only raised by the evidence. The amended answer, however, showed sufficient funds in the hands of the garnishees to pay the judgment due the plaintiff, therefore the plaintiff was in no way injured by the fact that the garnishees were indebted to the judgment debtor in an amount greater than the amount of the judgment and costs due the plaintiff. Furthermore, the plaintiff was not concerned in that matter and had no right to litigate it.

Section 16 [Cahill's St. ch. 62, ¶ 16] of the statute provides that the judgment against a garnishee shall acquit him from all demands by the defendant, for all goods, effects and credits paid, delivered, or accounted for by the garnishee by force of such judgment. Section 17 [Cahill's St. ch. 62, ¶ 17] provides

that, if the person summoned as garnishee is discharged, the judgment shall be no bar to an action brought against him by the defendant for the same demand. The effect of a judgment against the garnishees for $126.83 would be to acquit him of the amount paid under the garnishment only and all other claims remained as they were prior to the garnishment. If the garnishees were indebted to Granger in excess of $126.83, he had his remedy against them at law in a proper proceeding under formal pleadings where all rights could be determined. The judgment of the plaintiff was prior to the assignment by Ippoliti to Granger, therefore, the judgment was a prior claim on the amount in the hands of the garnishees to the extent of $106.75. In fact, it is not claimed by Granger that he had any interest in the $106.75. His only claim is that the garnishees were indebted to Granger as assignee of Ippoliti in a greater amount than was shown by the answer of the garnishees. The court was in error in requiring the garnishees to litigate the claim of $188, and in rendering judgment against the garnishees for any part thereof, and for costs.

The judgment as rendered was that the plaintiff recover against the defendant the sum of $252.16, as to $106.75 thereof for the use of E. J. Fortier, and as to the balance for the use of C. M. Granger, and that said plaintiff have his costs in this behalf expended to be taxed and have execution therefor. In *National Bank of America v. Indiana Banking Co.*, 114 Ill. 483, and *Kern v. Chicago Co-operative Brewery Ass'n,* 140 Ill. 371, it was held that the judgment against the garnishee should be in favor of the attaching, or judgment debtor, for the benefit of the attaching, or judgment creditor, who is treated as the real plaintiff. Such judgments must be, in form at least, for the whole amount due from the garnishee, and whatever

surplus there may be after paying the creditors entitled under the statute to share in the distribution, belongs to the debtor in whose name the suit is prosecuted. After the creditors entitled to share in the distribution of the property attached, or fund garnisheed, have been paid, if equities exist between the garnishee and attaching debtor as to the surplus, the court may adjust them and thus avoid any hardships that may arise.

The judgment in this case should have been for the sum of $126.83, being the amount of the answer made by the garnishees. It should have been in favor of Ippoliti for the benefit of Fortier against Puglisi and Indorante as garnishees, of which $106.75 thereof was for the use of Fortier and the balance of $20.08 for the use of Granger. No costs should have been assessed against the garnishees.

Complaint is made of the admission of improper evidence, and the holding of erroneous propositions of law and fact. What has already been said disposes of all questions which will necessarily arise in further proceedings in this case and it will not be necessary to consider any of the other points raised.

The judgment will be reversed and the cause remanded for further proceedings in accordance with the views above expressed.

*Reversed and remanded.*